**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SKYLAR CUNNINGHAM, individually on
behalf of herself and all others similarly
situated,

        Plaintiff,

v.

PRET A MANGER (USA) LIMITED,

        Defendant.

Case No.  1:19-cv-02322-CM

Hon. Colleen McMahon

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY STAY, PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................. 2

ARGUMENT ...................................................................................................... 4

I.     PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION. .................................................. 4

     A.     Plaintiff Lacks Article III Standing........................................................ 4

     B.     Plaintiff Lacks Class Standing. ............................................................ 7

     C.     Plaintiff Lacks Standing To Seek Injunctive Relief. ............................ 7

     D.     Plaintiff Fails To Establish Jurisdiction Under The Class Action Fairness Act.................................................................................................... 9

     a.     Plaintiff Fails to Adequately Allege the Amount in Controversy Required Under CAFA. .................................................................................. 9

     b.     The Court Should Decline Jurisdiction Based on the Home-State Exception. ....................................................................................... 10

     c.     The Court Should Decline Jurisdiction Based on the Local Controversy Exception. ....................................................................................... 11

     d.     The Court Should Decline to Exercise Jurisdiction Under the CAFA Discretionary Exception................................................................... 11

     E.     Plaintiff Fails to Establish Jurisdiction Under The Magnuson-Moss Warranty Act.................................................................................... 13

II.     PLAINTIFF'S AMENDED COMPLAINT FAILS ON THE MERITS AND MUST BE DISMISSED. ................................................................................ 13

     A.     Plaintiff Fails to Allege Facts Demonstrating a Reasonable Consumer Would Be Materially Misled. ............................................................ 13

     a.     No Reasonable Consumer Would Interpret Natural to Mean 100% Free of Trace Molecules of Glyphosate. ........................................................ 15

b.      No Reasonable Consumer Would Interpret Natural to Mean the Absence
        of Soya or the Other Challenged Substances. ....................................................... 16

B.      Plaintiff's Warranty Claims Fail Because Pret Did Not Breach Any
        Express or Implied Warranty. ................................................................................. 18

a.      Express Warranty. .................................................................................................. 18

b.      Magnuson-Moss Warranty Act. .............................................................................. 19

c.      Implied Warranty of Merchantability. .................................................................. 20

d.      Implied Warranty of Fitness. ................................................................................. 21

C.      Plaintiff's Duplicative Claim for Unjust Enrichment Fails. ................................ 22

III.    PLAINTIFF'S ATTEMPT TO APPLY NEW YORK LAW TO A
        NATIONWIDE CLASS IS IMPROPER. ............................................................... 23

IV.     ALTERNATIVELY, THIS CASE SHOULD BE STAYED UNDER THE
        PRIMARY JURISDICTION DOCTRINE. ............................................................. 24

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
 795 F.2d 238 (2d Cir. 1986)...............................................................................20

*Albert v. Blue Diamond Growers*,
 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015)......................................................8

*Altronics of Bethlehem, Inc. v. Repco, Inc.*,
 957 F.2d 1102 (3d Cir. 1992).............................................................................21

*AmeriPro Search, Inc. v. Fleming Steel Co.*,
 787 A.2d 988 (Pa. Super. Ct. 2001) ...................................................................22

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
 671 F.3d 140 (2d Cir. 2011)............................................................................4, 5

*Argabright v. Rheem Mfg. Co.*,
 258 F. Supp. 3d 470 (D.N.J. 2017) .....................................................................20

*Atik v. Welch Foods, Inc.*,
 No. 15 Civ. 5405 (MKB) (VMS), 2016 WL 11480151 (E.D.N.Y. Aug. 5,
 2016), *report and recommendation adopted*, No. 15CV5405MKBVMS,
 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) .....................................................21

*Axon v. Citrus World, Inc.*,
 354 F. Supp. 3d 170 (E.D.N.Y. 2018) .................................................................15

*Barton v. Lowe's Home Centers, Inc.*,
 124 A.3d 349 (Pa. Super. Ct. 2015)....................................................................20

*Bautista v. CytoSport, Inc.*,
 223 F. Supp. 3d 182 (S.D.N.Y. 2016)..................................................................22

*Blockbuster, Inc. v. Galeno*,
 472 F.3d 53 (2d Cir. 2006)...................................................................................9

*Brandt v. Bos. Sci. Corp.*,
 204 Ill. 2d 640 (2003) .........................................................................................20

*Brennan v. Shepherd Park Pharmacy, Inc.*,
 138 A.2d 494 (D.C. 1958) ...................................................................................20

*Buonasera v. Honest Co.*,
　208 F. Supp. 3d 555 (S.D.N.Y. 2016) ................................................................22

*Cacchillo v. Insmed, Inc.*,
　638 F.3d 401 (2d Cir. 2011) ...................................................................................7

*Conductores Monterrey, S.A. de C.V. v. Remee Prods. Corp.*,
　No. 95 Civ. 7925 (BSJ), 2000 WL 1448609 (S.D.N.Y. Sept. 28, 2000) ...............21

*Cook v. Gen. Nutrition Corp.*,
　749 F. App'x 126 (3d Cir. 2018) ..........................................................................22

*Crozier v. Johnson & Johnson Consumer Cos.*,
　901 F. Supp. 2d 494 (D.N.J. 2012) .......................................................................21

*DiBartolo v. Abbott Labs.*,
　914 F. Supp. 2d 601 (S.D.N.Y. 2012) ...................................................................18

*Donahue v. Ferolito, Vultaggio & Sons*,
　13 A.D.3d 77 (1st Dep't 2004) ..............................................................................21

*Doss v. Gen. Mills*,
　Civ. A. No. 18-cv-61924-RNS, Doc. No. 36 (S.D. Fla. filed June 14, 2019) ..........5

*Ebin v. Kangadis Food Inc.*,
　No. 13 Civ. 2311 (JSR), 2013 WL 3936193 (S.D.N.Y. July 26, 2013) .................13

*Elkind v. Revlon Consumer Prods. Corp.*,
　No. 14–CV–2484 (JS), 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ...............6, 7

*Fink v. Time Warner Cable*,
　714 F.3d 739 (2d Cir. 2013) .................................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
　528 U.S. 167 (2000) .................................................................................................7

*Gallagher v. Chipotle Mexican Grill, Inc.*,
　No. 15-cv-03952-HSG, 2016 WL 454083 (N.D. Cal. Feb. 5, 2016) .......................6

*Gonzalez v. Costco Wholesale Corp.*,
　No. 16-CV-2590 (NGG) (JO), 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) .........8

*Greene v. Gerber Prod. Co.*,
　262 F. Supp. 3d 38 (E.D.N.Y. 2017) .....................................................................23

*Hasemann v. Gerber Prods. Co.*,
　No. 15-CV-2995 (MKB), 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) ................8

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
 148 F. Supp. 3d 285 (S.D.N.Y. 2015)....................................................................8

*Hilsley v. Gen. Mills, Inc.*,
 376 F. Supp. 3d 1043 (S.D. Cal. 2019)................................................................22

*Hollinger v. Shoppers Paradise of New Jersey, Inc.*,
 134 N.J. Super. 328 (Law. Div. 1975), *aff'd*, 142 N.J. Super. 356 (App. Div.
 1976) ....................................................................................................................21

*Holve v. McCormick & Co.*,
 334 F. Supp. 3d 535 (W.D.N.Y. 2018) ..............................................................6, 7

*Horsmon v. Zimmer Holdings, Inc.*,
 2011 WL 5509420 (W.D. Pa. Nov. 10, 2011) ....................................................18

*Hoyte v. Yum! Brands, Inc.*,
 489 F. Supp. 2d 24 (D.D.C. 2007)..................................................................20, 21

*Huebner v. Hunter Packing Co.*,
 59 Ill. App. 3d 563 (1978) ..................................................................................21

*Ibarrola v. Kind, LLC*,
 83 F. Supp. 3d 751 (N.D. Ill. 2015) ....................................................................17

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
 275 F. Supp. 3d 910 (N.D. Ill. 2017) ..............................................................18, 20

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
 No. 13-CV-150 (JPO), 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) ....................8

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*,
 82 F. Supp. 3d 608 (D.N.J. 2015) ......................................................................18

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
 No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29,
 2013) ....................................................................................................................19

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
 831 F. Supp. 2d 507 (D. Mass. 2011) ..............................................................6, 23

*In re Gen. Mills Glyphosate Litig.*,
 Civ. File No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ..............15, 16

*In re KIND LLC "Healthy & All Natural" Litig.*,
 209 F. Supp. 3d 689 (S.D.N.Y. 2016)................................................................5, 25

*In re Kind LLC "Healthy & All Natural" Litig.*,
287 F. Supp. 3d 457 (S.D.N.Y. 2018)...................................................................24

*In re McDonald's French Fries Litig.*,
503 F. Supp. 2d 953 (N.D. Ill. 2007) .....................................................................21

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)..................................................................23

*Jackson & Eddy's LI RV Ctr., Inc.*,
845 F. Supp. 2d 523 (E.D.N.Y. 2012) ....................................................................20

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*,
870 A.2d 58 (D.C. 2005) .......................................................................................22

*Kubicki on behalf of Kubicki v. Medtronic, Inc.*,
293 F. Supp. 3d 129 (D.D.C. 2018).......................................................................18

*Kurovskaya v. Project O.H.R., Inc.*,
251 F. Supp. 3d 699 (S.D.N.Y. 2017).....................................................................10

*LaSala v. E\*Trade Secs. LLC*,
No. 05 Civ. 5869(SAS), 2005 WL 2848853 (S.D.N.Y. Oct. 31, 2005) ....................9

*Lewis v. Casey*,
518 U.S. 343 (1996).................................................................................................7

*Lieb v. Am. Motors Corp.*,
538 F. Supp. 127 (S.D.N.Y. 1982)..........................................................................13

*Lucker v. Bayside Cemetery*,
262 F.R.D. 185 (E.D.N.Y. 2009)............................................................................10

*Lujan v. Defenders of WildLife*,
504 U.S. 555 (1992).................................................................................................6

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012).......................................................................................6

*Marino v. Coach, Inc.*,
264 F. Supp. 3d 558 (S.D.N.Y. 2017).......................................................................8

*Mattera v. Clear Channel Commc'ns, Inc.*,
239 F.R.D. 70 (S.D.N.Y. 2006) ........................................................................10, 12

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)...................................................................................14

*Mehlenbacher v. Akzo Nobel Salt, Inc.*,
216 F.3d 291 (2d Cir. 2000).........................................................................9

*Mendez v. Shah*,
28 F. Supp. 3d 282 (D.N.J. 2014) .............................................................18

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
567 F. Supp. 2d 729 (D.N.J. 2008) ...........................................................22

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)......................................................................6, 7

*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) ......................................................14

*Nelson v. Nissan N. Am., Inc.*,
894 F. Supp. 2d 558 (D.N.J. 2012) ...........................................................20

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).........................................................................8

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*,
865 N.E.2d 334 (Ill. App. Ct. 2007) .........................................................18

*O'Hara v. Diageo-Guinness, USA, Inc.*,
306 F. Supp. 3d 441 (D. Mass. 2018) .......................................................22

*Painter Tool, Inc. v. Dunkirk Specialty Steel, LLC*,
2017 WL 2985578 (W.D. Pa. July 13, 2017) ...........................................20

*Parks v. Ainsworth Pet Nutrition, LLC*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019).............................................15, 19, 23

*Pelayo v. Nestlé USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) ..................................................16, 17

*Podpeskar v. Dannon Co.*,
No. 16-cv-8478 (KBF), 2017 WL 6001845 (S.D.N.Y., Dec. 3, 2017)....................14

*Price v. L'Oreal USA, Inc.*,
No. 17 Civ. 0614 (LGS), 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) .................23

*Pungitore v. Barbera*,
506 Fed. App'x 40 (2d Cir. 2012)................................................................8

*Quality Air Servs., LLC v. Milwaukee Valve Co.*,
671 F. Supp. 2d 36 (D.D.C. 2009) ............................................................21

*Rhodes v. Kroger Co.*,
   No. 4:15CV000312 (JLH), 2015 WL 5006070 (E.D. Ark. Aug. 24, 2015) ...........................11

*Romero v. Flowers Bakeries*,
   LLC, No. 14-CV-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) .........................24

*Rothbaum v. Samsung Telecommunications Am., LLC*,
   52 F. Supp. 3d 185 (D. Mass. 2014) ...................................................................................20

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010) ...........................21

*Scholder v. Riviana Foods Inc.*,
   No. 16-cv-6002 (ADS) (AKT), 2017 WL 2773586 (E.D.N.Y. June 23, 2017) ....................25

*Shain v. Ellison*,
   356 F.3d 211 (2d Cir. 2004)...........................................................................................7, 8

*Silva v. Smucker Nat. Foods, Inc.*,
   No. 14-CV-6154 (JG)(RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .......................20

*Sitt v. Nature's Bounty, Inc.*,
   No. 15–CV-4199 (MKB), 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ............................18

*Softub, Inc. v. Mundial, Inc.*,
   53 F. Supp. 3d 235 (D. Mass. 2014) ...................................................................................18

*Sorrentino v. ASN Roosevelt Ctr., LLC*,
   588 F. Supp. 2d 350 (E.D.N.Y. 2008) ................................................................................12

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..................................................................................................4, 5

*Stevens v. C. R. Bard, Inc.*,
   2018 WL 692097 (W.D. Pa. Feb. 2, 2018) ..........................................................................18

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).............................................................................................................7

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
   505 F. Supp. 2d 20 (D.D.C. 2007) .....................................................................................22

*Viscusi v. Proctor & Gamble*,
   No. 05-CV-01528 (DLI)(LB), 2007 WL 2071546 (E.D.N.Y. July 16, 2007),
   *aff'd sub nom. Viscusi v. P & G-Clairol, Inc.*, 346 F. App'x 715 (2d Cir. 2009)...................20

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) .............................................................................................5

*Wetzel v. Capital City Real Estate, LLC*,
　73 A.3d 1000 (D.C. 2013) ...............................................................18

*Wilson v. Frito-Lay N. Am., Inc.*,
　No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)..............19

**Codes, Statutes & Rules**

7 C.F.R. § 205.605 (2019) ...............................................................16

15 U.S.C. §§ 2301-2312 *et seq.* Magnuson-Moss Warranty Act ("MMWA") ......................13, 19

15 U.S.C. § 2310(d)(3) ...............................................................20

15 U.S.C. § 2310(d)(3)(C) ...............................................................13

21 C.F.R. § 184.1444(c) (2016) ...............................................................17

28 U.S.C. § 1332 *et seq.* Class Action Fairness Act ("CAFA") ..........................................*passim*

40 C.F.R. § 180.364 (2013) ...............................................................16

65 Fed. Reg. 80,548-01 (Dec. 21, 2000) ("National Organic Program")....................................16

80 Fed. Reg. 69,905-01 (Nov. 12, 2015) (to be codified at 21 C.F.R. Part. 101),
　Use of the Term "Natural" in the Labeling of Human Food Products; Request
　for Information and Comments ("FDA Natural Policy") ......................................15, 17, 18, 24

Fed. R. Civ. P. 8 ...............................................................24

Fed. R. Civ. P. 12(b)(1)...............................................................4

N.Y. Gen. Bus. Law § 349 (McKinney 2019) ("§ 349")......................................*passim*

N.Y. Gen. Bus. Law § 350 (McKinney 2019) ("§ 350")......................................*passim*

N.Y. U.C.C. § 2–314(2)(a)-(c) (McKinney 2019) .........................................................20

N.Y. U.C.C. § 2-315 (McKinney 2019) ...............................................................21

**Other Authorities**

Julie Creswell, *Is It 'Natural'? Consumers, and Lawyers, Want to Know*,
　NY Times at 5 (Feb. 16, 2018) ...............................................................24

Defendant Pret A Manger (USA) Limited ("Defendant" or "Pret") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff Skylar Cunningham's ("Plaintiff") Amended Class Action Complaint ("Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

Plaintiff has brought this putative class action in an effort to profit from an ongoing campaign that targets food companies by making broad and unsupported assertions regarding the ingredients in their food products in order to claim that the company's marketing is misleading. Here, Plaintiff seeks to certify both a national and New York class based on allegations regarding Pret's use of the term "natural" in describing its food, which Plaintiff claims is deceptive and misleading because some of its products (the "Products") allegedly contain "synthetic ingredients," soya, and traces of glyphosate. Strikingly, while making sweeping assertions about the presence of these allegedly non-natural substances in the Products, Plaintiff fails to allege *any* support for these claims, whether in the form of testing or otherwise. She also makes no specific factual assertions regarding which Products she purchased, or whether those products even contained the allegedly synthetic substances.

Plaintiff's causes of action based on (1) New York General Business Law §§ 349 and 350 (hereafter "§ 349" or "§ 350"); (2) breach of express or implied warranty; and (3) unjust enrichment all fail for numerous reasons. As an initial matter, Plaintiff's Amended Complaint fails to plead an injury sufficient to confer Article III or class standing. Her claims are also insufficient to establish standing for injunctive relief because Plaintiff has not shown any risk of future harm. These deficiencies alone warrant dismissal of the Amended Complaint for lack of subject matter jurisdiction.

Even if Plaintiff were able to establish standing, this Court does not have subject matter jurisdiction over the Amended Complaint for the separate, independent basis that Plaintiff has

not met the requirements for jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 *et seq.* (hereafter "CAFA"). Plaintiff has not only failed to prove that the class could meet the amount in controversy requirement, but the facts illustrate that all three of the exceptions to CAFA jurisdiction apply.

Plaintiff's claims also fail as a matter of law. Under §§ 349 and 350, Plaintiff must show that a reasonable consumer would be materially misled by Pret's statements. But in light of the applicable regulatory framework, a reasonable consumer would not expect products labeled "natural" to be completely devoid of trace amounts of glyphosate, soya, or other commonly used ingredients that are allowed even in foods labeled "organic."

Plaintiff's claims for breach of express or implied warranty are also without merit. The general description of the products as "natural" is not a warranty at all, and even if it were, Pret has not breached such a warranty by selling Products that allegedly contain commonly used ingredients and traces of an herbicide. Plaintiff's duplicative claim for unjust enrichment also fails under New York law. Notably, Plaintiff has not specified the state law under which she brings her warranty and unjust enrichment claims, also requiring dismissal of these claims.

Finally, and in the alternative, this action should be stayed under the doctrine of primary jurisdiction, pending the FDA's issuance of guidance regarding the definition of "natural".

For these reasons and those detailed below, Plaintiff's claims are defective as a matter of law and the Court should dismiss the Amended Complaint in its entirety with prejudice.

## FACTUAL BACKGROUND

Plaintiff is an individual residing in New York who allegedly purchased Pret's food products. Am. Compl. ¶ 46. She filed the Amended Complaint on behalf of herself and a putative class. *Id.* ¶ 50. Pret is a sandwich chain with its US Head Office based in New York. *Id.* ¶ 48. As of the filing date of the Amended Complaint, Pret owns and operates 87 locations in the United

States, 57 of which are located in New York. Declaration of Gregory Thorp ("Thorp Decl."), ¶ 3. As of that date, Pret's other owned and operated locations are in Washington D.C., Illinois, Massachusetts, New Jersey, and Pennsylvania. *Id.* ¶ 3. Since 2013, no less than 72 percent of Pret's sales in the United States have been made in New York. *Id.* ¶ 4. Plaintiff alleges this Court has jurisdiction over her claims under CAFA, 28 U.S.C. § 1332(d). *Id.* ¶ 43.

Plaintiff's core allegation is that Pret's use of the term "natural" in its marketing and advertising is "false, deceptive, and misleading because the Products contain soya, a genetically modified organism ("GMO"), traces of glyphosate, a synthetic biocide, as well as numerous other synthetic ingredients." Am. Compl. ¶¶ 2, 9. According to the Amended Complaint, Plaintiff and the putative class members "paid a premium for the Products" as a result of this campaign and "purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products." *Id.* ¶¶ 3, 41.

While Plaintiff alleges that the Products contain (1) synthetic ingredients, (2) GMOs in the form of "soya"; and (3) traces of glyphosate, a commonly used herbicide, *id.* ¶¶ 10-20, she does not allege that any testing was conducted to verify her claim that these substances are actually present in the Products, or in what amount. Indeed, other than claiming that some of these ingredients are listed on the packaging of certain unidentified Products, *id.* ¶ 27, she does not allege any basis for her allegations. Nor does Plaintiff specifically allege which of the Products she purchased, or that any of the challenged substances were actually present in the Products she did purchase.

Further, among the challenged "synthetic" ingredients, Plaintiff concedes that citric, malic, and lactic acids may occur *naturally* in foods. *Id.* ¶ 10. Soy, which stems from soybeans,

may also occur naturally in foods, and is not by definition genetically modified.[1] Plaintiff provides no support or testing for her allegation that the synthetic versions of these ingredients are present in the Products.

In addition to damages, the Amended Complaint requests that Pret: "1) cease advertising or stating the Products as Natural; and 2) inform consumers that the Products contain GMOs and other synthetic ingredients in advertising for the Products." *Id.* ¶¶ 42, 67, 74, 85, 102.

## ARGUMENT

**I. Plaintiff's Amended Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction.**

Plaintiff has failed to allege a concrete and particularized injury sufficient to confer Article III standing, class standing, or standing to seek injunctive relief, requiring dismissal of the Amended Complaint. Moreover, this court lacks federal subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d), because Plaintiff has not sufficiently pled the necessary amount in controversy, and because all three exceptions to CAFA jurisdiction apply.

### A. Plaintiff Lacks Article III Standing.

Plaintiff fails to allege an injury sufficient to confer Article III standing, requiring dismissal of the Amended Complaint under Fed. R. Civ. P. 12(b)(1). To establish the "irreducible constitutional minimum of standing," a plaintiff must show, in part, that she suffered an injury-in-fact which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (citations omitted); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). For an injury to be "concrete" it must actually exist, and cannot be "abstract." *Spokeo, Inc.*, 136 S. Ct. at 1548-

---

[1] Soy is a plant in the pea family and is common in many diets. *Soy*, NCCIH.gov, *available at* https://nccih.nih.gov/health/soy/ataglance.htm.

49. For an injury to be "particularized" it must affect the plaintiff in a "personal and individual way." *Id.* at 1548 (citation omitted).

To satisfy the standing requirement, Plaintiff must allege that she actually purchased Products that contain the allegedly synthetic ingredients, traces of glyphosate, or GMOs. Here, Plaintiff has failed to make such an allegation with any specificity or particularity. Indeed, because Plaintiff fails to allege any testing or other support for her bald assertion that the Products she purchased (or any of the Products) contain the challenged substances, her injury is not concrete. Rather, it is entirely speculative and therefore insufficient to establish standing as a matter of law. *See In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 697-98 (S.D.N.Y. 2016) (finding that testing that detected GMOs in at least some products was insufficient to confer standing because plaintiffs failed to specify whether they actually purchased the products containing GMOs); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (finding no standing where "[t]he consumers' allegations fail to show that any of the particular packages of Hebrew National beef they personally purchased contained non-kosher beef").

Plaintiff also fails to allege that she suffered a particularized injury sufficient to establish standing. The Amended Complaint contains conclusory and unsupported statements that the Products contain the challenged substances and that Plaintiff thus paid a "premium" for the Products she purchased. But because Plaintiff does not even allege that her purchases actually contained any of these substances, her alleged economic injury is hypothetical and conjectural at best. *See Amidax Trading Grp.*, 671 F.3d at 146 (finding that the mere possibility of injury was insufficient to allege plausible injury-in-fact); *see also* Order Granting Motion to Dismiss in *Doss v. Gen. Mills,* Civ. A. No. 18-cv-61924-RNS, Doc. No. 36, at pp. 3-4 (S.D. Fla. filed June 14, 2019) (finding no economic injury when plaintiff did not even allege that the product "she

herself bought actually contain[ed] any glyphosate"). And to the extent she vaguely alleges that some Products identified synthetic ingredients on their packaging, Plaintiff cannot establish injury because she failed to allege that she received a product that was anything other than what Pret indicated it was offering. *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (finding no injury where the "[p]laintiffs paid for fruit juice, . . . received fruit juice, which they consumed without suffering harm") ("*Fruit Juice*"). Plaintiff also fails to explain how she suffered injury from the allegedly "synthetic" ingredients that, as explained below, are permitted in "organic" foods and that even she acknowledges "exist[] *naturally* in some foods[.]" Am. Compl. ¶ 10 (emphasis added).

Finally, Plaintiff has not even identified with specificity which Products she purchased. Plaintiff does not have Article III standing to assert claims arising from the marketing of products she has not purchased. *See Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *4 (E.D.N.Y. May 14, 2015) (finding that because plaintiffs had not purchased the product, they "ha[d] not been injured in the 'personal and individual way' required by Article III.") (quoting *Lujan v. Defenders of WildLife*, 504 U.S. 555, 560 n.1 (1992).); *Gallagher v. Chipotle Mexican Grill, Inc.*, 2016 WL 454083, at *2 (N.D. Cal. Feb. 5, 2016) (finding no standing because "[n]owhere in the complaint does Plaintiff specify which of Defendant's 'Food Products' she purchased."). Because Plaintiff has not specifically alleged which Products she purchased, she has not established a causal connection between the Products and her injuries as required by Article III. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("*with respect to each asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury to [her]self.") (emphasis and brackets in original); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (finding no standing to assert claims related to products plaintiff did not purchase); *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535,

547-48 (W.D.N.Y. 2018). Plaintiff's bare-boned allegations therefore do not illustrate a "concrete and particularized" injury sufficient to meet the constitutional minimum requirement for standing.

## B. Plaintiff Lacks Class Standing.

Plaintiff cannot save "claims for which [s]he lacks standing by purporting to assert them on behalf of others who might have standing[.]" *Elkind*, 2015 WL 2344134, at *4. "The requirement of Article III is 'no less true with respect to class actions than with respect to other suits.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* As explained above, Plaintiff has not been able to assert an injury sufficient to confer Article III standing for her claims related to any of the Products. Because there is no named Plaintiff who can assert a claim on behalf of the class, Plaintiff lacks class standing and this action must be dismissed. *See NECA-IBEW Health & Welfare Fund*, 693 F.3d at 159 ("[t]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant").

## C. Plaintiff Lacks Standing To Seek Injunctive Relief.

Plaintiff also lacks standing to seek injunctive relief. A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). When seeking injunctive relief, "a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).). Plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [s]he . . . will be injured in the future." *Shain*

*v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citation omitted); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Pungitore v. Barbera*, 506 Fed. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm.") (emphasis in original and citation omitted).

"[D]istrict courts in the Second Circuit have concluded that consumer plaintiffs asserting deceptive advertising claims do not have standing to seek injunctive relief because of insufficient allegations of future injury." *Hasemann v. Gerber Prods. Co.*, 2016 WL 5477595, at **8–9 (E.D.N.Y. Sept. 28, 2016); *see also Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015) (no standing to seek injunctive relief where plaintiffs did not allege they would purchase the deceptive product in the future); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 295–96 (S.D.N.Y. 2015) (same); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction") (citations omitted). These cases apply here.

Plaintiff claims that she "would purchase the Products in the immediate future" if the products were "actually 'Natural.'" Am. Compl. ¶ 46. However, this allegation does not confer standing for injunctive relief because Plaintiff is merely relying on her past injury and does not identify any potential future injury. *See, Gonzalez v. Costco Wholesale Corp.*, 2018 WL 4783962, at *6 (E.D.N.Y. Sept. 29, 2018) ("Plaintiff also alleges that she would resume purchasing the Products in the future if 'Defendants misleading conduct were remedied.' . . . These allegations are insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past injury."); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 565 (S.D.N.Y. 2017) (same). Because Plaintiff is now aware of the allegedly deceptive advertising, she cannot be deceived in the future and there is no risk of future harm, rendering injunctive relief

inappropriate. Accordingly, Plaintiff has not alleged any likelihood of future or continuing harm and lacks standing to claim injunctive relief.

### D. Plaintiff Fails To Establish Jurisdiction Under The Class Action Fairness Act.

CAFA gives district courts jurisdiction over class actions where (1) there are at least 100 potential class members; (2) at least one plaintiff is diverse from any defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA excludes certain cases that meet its jurisdictional prerequisites, but are uniquely local in nature. These exceptions include: (1) the home-state exception; (2) the local controversy exception; and (3) the discretionary exception.

### a. Plaintiff Fails to Adequately Allege the Amount in Controversy Required Under CAFA.

The party asserting federal subject matter jurisdiction bears the burden of establishing that the requirements of federal jurisdiction have been met. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). Here, Plaintiff has not met her burden of showing a "'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." *Id.* (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 296 (2d Cir. 2000).). Plaintiff "cannot sidestep the jurisdictional question simply by pleading an indeterminate amount of damages, accompanied by a conclusory statement that the amount-in-controversy threshold is met." *LaSala v. E\*Trade Secs. LLC*, 2005 WL 2848853, at \*5 (S.D.N.Y. Oct. 31, 2005). Plaintiff's only allegation is that "the amount in controversy is in excess of $5,000,000, exclusive of interests and costs[,]"*see* Am. Compl. ¶ 43, which is insufficient as a matter of law. Moreover, Plaintiff's alleged economic injury on behalf of herself and the putative class is that consumers "paid a premium for the Products[.]" *Id.* ¶¶ 3, 39-41. But Plaintiff fails to allege a reasonable probability that the aggregate of these miniscule alleged "premiums" (which would be mere cents for

sandwiches and chips that cost a few dollars apiece) would amount to $5 million. Because the Amended Complaint is devoid of *any* facts that would support Plaintiff's conclusory allegation, she has not met her burden of establishing jurisdiction under CAFA.

**b. The Court Should Decline Jurisdiction Based on the Home-State Exception.**

Under the home state exception, "[a] district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i), (B).

Pret is a citizen of the State of New York, where its Head Office is located, and where over 70 percent of its sales are made. *See* Am. Compl. ¶ 48; Thorp Decl. ¶¶ 3-5; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen . . . of the State or foreign state where it has its principal place of business[.]").

Through the Thorp Declaration, Pret has established that, from 2013 to 2018, at least 72 percent (well over two-thirds) of its sales and transactions took place in New York. *See* Thorp Decl. ¶¶ 3-5. It therefore can be reasonably inferred that more than two-thirds of the putative class members (*i.e.* the purchasers of the Products) are citizens of New York. *See e.g.*, *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (finding it "reasonably likely" that two-thirds of a class comprised of New York radio station employees are New York citizens); *Kurovskaya v. Project O.H.R., Inc.*, 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017) (inferring that "two-thirds or more of the putative class members—home care workers engaged to work in New York for Defendant—are citizens of New York State."); *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 189 (E.D.N.Y. 2009) (remanding based on "the eminently reasonable assumption" that the majority of people desiring to be buried in a Queens cemetery were New

York State residents); *Rhodes v. Kroger Co.*, 2015 WL 5006070, at *2 (E.D. Ark. Aug. 24, 2015) ("[I]n light of the nature of the items sold at Kroger and the location of the stores, the percentage of the shoppers who are Arkansas citizens far exceeds two-thirds.").

Because both Pret and more than two-thirds of the putative class members are New York citizens, the home-state exception applies and precludes application of CAFA jurisdiction.

### c. The Court Should Decline Jurisdiction Based on the Local Controversy Exception.

Under the local controversy exception, a court cannot exercise jurisdiction over a class in which: (1) greater than two-thirds of the class members and the defendant are citizens of the state in which the action was originally filed, (2) principal injuries resulting from the alleged conduct of the defendant were incurred in that state, and (3) during the three-year period preceding the filing of the class action, no other class action has been filed asserting the same or similar factual allegations against the defendant. 28 U.S.C. § 1332(d)(4)(A).

As discussed above, Pret is a citizen of New York, more than two-thirds of the class members are New York citizens, and the principal injuries alleged by Plaintiff took place in New York, where Plaintiff resides and the bulk of Pret's sales take place. *See* Thorp Decl. ¶¶ 3-5. Pret is the sole Defendant in this action, and no other similar class action has been filed against this company by the same or other plaintiffs. *See* 28 U.S.C. § 1332(d)(4)(A)(ii). Thus, the elements of the local controversy exception have been satisfied and the Court is precluded from exercising CAFA jurisdiction.

### d. The Court Should Decline Jurisdiction Under the Discretionary Exception.

Even if the Court finds that neither the home-state nor the local controversy exception applies, CAFA affords the Court discretion to decline to exercise jurisdiction under the discretionary exception. As a threshold matter, the Court may decline jurisdiction where greater

than one-third, but less than two-thirds, of the members of all proposed plaintiff classes in the aggregate and defendant are citizens of the State in which the class action was originally filed. 28 U.S.C. § 1332(d)(3). Then, based upon a totality of the circumstances, the court analyzes whether the claims: (1) involve matters of national or interstate interest; (2) will be governed by laws of the State where the action was originally filed; (3) have been pleaded in a manner that seeks to avoid federal jurisdiction; (4) were brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (5) involve a proposed plaintiff class where the aggregate number of citizens of the State in which the action was originally filed is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (6) are similar to one or more other class actions brought on behalf of the same or other persons during the 3-year period preceding the filing of that class action. 28 U.S.C. § 1332(d)(3). This is a balancing test, and a party need not satisfy all factors. *See Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008).

Here, in light of the Thorp Declaration regarding the volume of Pret's sales and transactions in New York, there is no doubt that at least one-third of the class members are New York citizens. *See Mattera*, 239 F.R.D. at 80-81. Additionally, the remaining discretionary factors weigh in favor of the declining to exercise CAFA jurisdiction. Given the sheer volume of sales of the Products in New York, it is the forum with the greatest interest in this matter. Thorp Decl. ¶¶ 3-5. Plaintiff has also asserted a New York sub-class, acknowledging the large number of New York class members, and New York law is the only state law she specifically identifies. Am. Compl. ¶¶ 52; 62-123. As explained and in addition to the above, the named Plaintiff resides in New York, Pret's principal place of business is in New York, the majority of Pret's

stores are in New York, and no similar class actions have been filed against Pret. On balance, these factors heavily weigh in favor of the Court declining to exercise jurisdiction under CAFA.

### E. Plaintiff Fails to Establish Jurisdiction Under The Magnuson-Moss Warranty Act.

The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-2312 *et seq.*, provides a federal cause of action for state law express and implied warranty claims. However, like CAFA, the MMWA contains explicit jurisdictional requirements for class actions. Specifically, MMWA directs that "[n]o claim shall be cognizable in a suit brought under [the Act] . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C).

Here, the Court lacks jurisdiction over the MMWA claims because the Amended Complaint lists one named plaintiff, which does not satisfy the numerosity requirement. *See* Am. Compl. ¶ 46. The fact that Plaintiff seeks to certify over 100 potential class members in the future is not sufficient to confer MMWA jurisdiction. *See Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 132 (S.D.N.Y. 1982) (finding no MMWA jurisdiction because "[a] court cannot superintend a prospective plaintiff's activities designed to satisfy jurisdictional prerequisites after the complaint is filed."); *Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (dismissing MMWA claims because "the MMWA provides that no claim shall be cognizable in a suit . . . brought under the MMWA in federal district court—unless the MMWA's independent jurisdictional requirements are met") (internal quotation marks omitted).

## II. Plaintiff's Amended Complaint Fails on the Merits and Must Be Dismissed.

### A. Plaintiff Fails to Allege Facts Demonstrating a Reasonable Consumer Would Be Materially Misled.

Plaintiff's claims on behalf of the New York Sub-class for violations of §§ 349 and 350 fail because they do not plausibly allege conduct that would mislead reasonable consumers.

Sections 349 and 350 prohibit deceptive business practices and false advertising, respectively. *See* N.Y. Gen. Bus. Law § 349 (McKinney 2019); N.Y. Gen. Bus. Law § 350 (McKinney 2019). "To establish a *prima facie* case under either section 349 or 350, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673-74 (E.D.N.Y. 2017) (*quoting Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).). An act is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Nelson*, 246 F. Supp. 3d at 673 (citation omitted).

Courts analyze whether a statement is misleading in a material way by using the objective, reasonable consumer standard. *Podpeskar v. Dannon Co.*, 2017 WL 6001845, at *3 (S.D.N.Y., Dec. 3, 2017). Importantly, even at the motion to dismiss stage, courts are empowered to make this determination as a matter of law. *Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013); *Podpeskar*, 2017 WL 6001845 at *3 (noting that courts are empowered to determine, as a matter of law, that plaintiffs have not alleged a plausible allegation that a reasonable consumer would be deceived).

Plaintiff's §§ 349 and 350 claims rest on the allegations that Pret's use of the term "natural" is "false, deceptive, and misleading because the Products contain soya . . . traces of glyphosate, . . . as well as numerous other synthetic ingredients." Am. Compl. ¶¶ 2, 9. As set forth above, Plaintiff's claims fail because she does not allege any testing or other support for the assertion that the challenged substances are actually present in the Products, or that the challenged substances are actually synthetic or genetically modified. Yet, even assuming that the Products contain some amount of these substances, Plaintiff's claims fail because no reasonable consumer would interpret the term "natural" to fall within Plaintiff's stringent definition.

### a. No Reasonable Consumer Would Interpret Natural to Mean 100% Free of Trace Molecules of Glyphosate.

Without alleging with any specificity that traces of glyphosate are actually in the Products (or in what amount), Plaintiff claims that the alleged presence of glyphosate residue in the Products renders Pret's use of "natural" misleading to reasonable consumers. But "a reasonable consumer would not be so absolutist as to require that "natural" means there is no glyphosate, even an accidental and innocuous amount, in the Products." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled [natural] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA.") (citation omitted); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (finding it was "not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate . . . or that a reasonable consumer would so interpret the label.").

Moreover, Plaintiff alleges that one can "look to the regulatory agencies for their guidance" to determine what a reasonable consumer believes the term "natural" to mean. Am. Compl. ¶ 21. But she ignores that the FDA has "a longstanding policy for the use of the term 'natural' on the labels of human food[,]" under which "the use of the term 'natural,' [. . .] was not intended to address food production methods, such as [. . .] the use of pesticides[.]" Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905-01, 69,906-07 (Nov. 12, 2015) (to be codified at 21 C.F.R. Part 101) (hereafter "FDA Natural Policy"). Indeed, federal regulations even permit foods labeled as organic, which are held to a higher standard than products labeled "natural," to contain trace

amounts of glyphosate. *See* National Organic Program, 65 Fed. Reg. 80,548-01, 80,629 (Dec. 21,

2000); *see* 40 C.F.R. § 180.364 (2013). Plaintiff's claims therefore seek the nonsensical result of

holding foods marketed as "natural" to a more stringent standard than foods satisfying the

exacting "organic" standard. *See Pelayo v. Nestlé USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal.

2013) (finding that consumers hold organic products to a higher standard than products labeled

"natural," and it would be implausible that a reasonable consumer would believe ingredients

allowed in an "organic" product would not be allowed in a "natural" product); *In re Gen. Mills

Glyphosate Litig.*, 2017 WL 2983877, at *6.

### b. No Reasonable Consumer Would Interpret Natural to Mean the Absence of Soya or the Other Challenged Substances.

Plaintiff's allegations that the purported inclusion of "synthetic ingredients" and soya

render Pret's "natural" labeling misleading fail for the same reason. Just as no reasonable

consumer would understand "natural" to mean no traces of glyphosate, no reasonable consumer

would believe "natural" falls within Plaintiff's rigid definition, *i.e.* the complete absence of the

allegedly "synthetic" ingredients listed in the Amended Complaint. Even Plaintiff implicitly

acknowledges that her proposed definition is unreasonably stringent by relying on regulations

applicable to organic foods for her definitions of the terms "natural" and "synthetic." Am.

Compl. ¶ 22; *id.* Ex. A. But again, courts have consistently held that no reasonable consumer

interprets "natural" to be synonymous with "organic". See *Pelayo*, 989 F. Supp. 2d at 979; *In re

Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6.

This same flaw extends to virtually all of the purported "synthetic" substances Plaintiff

lists in her Amended Complaint. According to federal regulations, ascorbic, tartaric, citric, lactic,

and malic acids and glycerides (mono- and di-) are allowed as ingredients in products labeled as

"organic". 7 C.F.R. § 205.605 (2019).   As explained above, because these ingredients are

permitted in organic foods, a reasonable consumer would not be misled by their presence in food labeled "natural". *See Pelayo*, 989 F. Supp. 2d at 979.

The only remaining "synthetic ingredient" Plaintiff alleges (without any support) is in the Products, maltodextrin, is also generally recognized as safe under federal law and may be "used in food with no limitation other than current good manufacturing practice." 21 C.F.R. § 184.1444(c) (2016). Notably, Plaintiff lists maltodextrin as an ingredient in Pret Salt & Vinegar Chips, a product that no reasonable consumer would expect to be devoid of common and safe food additives. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) (finding that "[c]ourts have dismissed complaints premised on such logical inconsistences" including when a consumer's understanding of a label contradicts information on the ingredients list).

Finally, and as explained above, Plaintiff fails to allege any support for her blanket assertion that the soya included in certain Products is actually genetically modified or anything other than natural. Because her claims are insufficiently pled, they are barred as a matter of law. Nonetheless, even assuming some Products contain GMOs, the FDA has explicitly stated in its policy on the use of the term "natural" that "it was not intended to address food production methods, such as the use of genetic engineering or other forms of genetic modification[.]" FDA Natural Policy, 80 Fed. Reg. at 69,906. The FDA's guidance on "natural" is in conflict with Plaintiff's novel definition, but again, when "ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance." Am. Compl. ¶ 21. By Plaintiff's own admission, the FDA's guidance should inform reasonable consumer expectations, and a reasonable consumer therefore would not expect the term "natural" to address food production methods such as whether or not food products are genetically modified.

For the foregoing reasons, no reasonable consumer could be misled or deceived by Pret's "natural" labeling and Plaintiff's claims under §§ 349 and 350 should be dismissed.

**B. Plaintiff's Warranty Claims Fail Because Pret Did Not Breach Any Express or Implied Warranty.**

All of Plaintiff's claims based on an alleged warranty fail because use of the term "natural" in advertising does not constitute an express or implied warranty and Pret did not breach any such warranty.

**a. Express Warranty.**

Under New York law, "[t]o state a claim for breach of express warranty, plaintiff must allege that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *DiBartolo v. Abbott Labs*., 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (citations and internal quotation marks omitted).[2] "Generalized statements by a defendant, however, do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016) (citations and internal quotation marks omitted).[3] The FDA has acknowledged this point in the context of the "natural" label. *See* FDA Natural Policy, 80 Fed. Reg. at 69,906 (stating that consumers regard many uses of the term "natural" as "non-informative" because of its widespread use).

---

[2] Other relevant States' laws apply the same standard. *See Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1005 (D.C. 2013); *In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 614 (D.N.J. 2015); *Softub, Inc. v. Mundial, Inc.,* 53 F. Supp. 3d 235, 252–53 (D. Mass. 2014); *Stevens v. C. R. Bard, Inc.*, 2018 WL 692097, at *7 (W.D. Pa. Feb. 2, 2018); *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc*., 865 N.E.2d 334, 340 (Ill. App. Ct. 2007).

[3] *See also Kubicki on behalf of Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 191–92 (D.D.C. 2018); *Mendez v. Shah*, 28 F. Supp. 3d 282, 295 (D.N.J. 2014); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 925 (N.D. Ill. 2017); *Horsmon v. Zimmer Holdings, Inc.*, 2011 WL 5509420, at *4 (W.D. Pa. Nov. 10, 2011).

Here, for the same reasons discussed above, a reasonable consumer would not interpret the label "natural" as warranting that the Products contain no traces of glyphosate, soya, or the other ingredients Plaintiff alleges are in the Products. *See, e.g., Parks*, 377 F. Supp. 3d at 248 ("The presence of unspecified trace amounts of glyphosate is not a breach of warranty that the Products are 'natural.'"). Moreover, as explained above, even assuming that the "natural" label was a warranty, presence of the ingredients Plaintiff alleges are in the Products could not constitute a breach of warranty because many of these ingredients are permissible in foods labeled "organic," and may occur *naturally*, a fact Plaintiff herself concedes. Am. Compl. ¶ 10.

### b. Magnuson-Moss Warranty Act.

Plaintiff also alleges that Pret violated the MMWA, 15 U.S.C. § 2301 *et seq*. Am. Compl. ¶¶ 94-102. The MMWA prohibits "any written affirmation of fact or written promise" that "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time[.]" 15 U.S.C. § 2301(6)(A).

Multiple courts have held that the use of "natural" on a food product label does not constitute a written warranty under the MMWA. *See, e.g., In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (dismissing MMWA claims because "[a]n 'All Natural' label does not warrant a product free from defect."); *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013) (same). There is no basis for a different outcome here.

Pret's use of the term "natural" is neither a written affirmation that the Products are free from defect, nor a promise that the Products will meet a specified level of performance over a specified period of time. As such, Plaintiff fails to state a claim for relief under the MMWA.

Plaintiff's MMWA claim also must be dismissed because she failed to specifically allege that her individual claim exceeds "the sum or value of $25," as required by the MMWA. 15 U.S.C. § 2310(d)(3); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 243-45 (2d Cir. 1986).

### c. Implied Warranty of Merchantability.

Under New York law, the implied warranty of merchantability requires that the relevant goods be: 1) fit for their ordinary purpose or use; 2) capable of passing without objection in the trade under the contract description; and 3) of fair and average quality for such goods. N.Y. U.C.C. § 2–314(2)(a)-(c) (McKinney 2019); *Jackson & Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530-31 (E.D.N.Y. 2012).[4] The implied warranty of merchantability, however, "does not mean that the product will fulfill a 'buyer's every expectation' but rather simply 'provides for a minimum level of quality.'" *Viscusi v. Proctor & Gamble*, 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007), *aff'd sub nom. Viscusi v. P & G-Clairol, Inc.*, 346 F. App'x 715 (2d Cir. 2009) (citations omitted).[5]

"Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim concerning "natural" label on beverage where the complaint made "no allegation that [the beverage] is unfit for human consumption"); *see also Donahue v. Ferolito, Vultaggio & Sons*, 13

---

[4] *See also Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 27 (D.D.C. 2007); *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 484 (D.N.J. 2017); *Rothbaum v. Samsung Telecommunications Am., LLC*, 52 F. Supp. 3d 185, 201 (D. Mass. 2014); *Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349, 357 (Pa. Super. Ct. 2015); *Brandt v. Bos. Sci. Corp.*, 204 Ill. 2d 640, 645 (2003).

[5] *See also Brennan v. Shepherd Park Pharmacy, Inc.*, 138 A.2d 494, 495 (D.C. 1958); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 566-67 (D.N.J. 2012); *Rothbaum*, 52 F. Supp. 3d at 201; *Painter Tool, Inc. v. Dunkirk Specialty Steel, LLC*, 2017 WL 2985578, at *3 (W.D. Pa. July 13, 2017); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d at 926-27.

A.D.3d 77, 79 (1st Dep't 2004) (finding no breach of implied warranty because beverages caused no ill effects and were fit for their intended purpose, regardless of any false labeling); *Atik v. Welch Foods, Inc.*, 2016 WL 11480151, at *13 (E.D.N.Y. Aug. 5, 2016), *report and recommendation adopted*, No. 15CV5405MKBVMS, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) (recommending dismissal of implied warranty claim for failure to allege that the products were unfit for consumption).[6]

Here, because Plaintiff has not alleged that any of Pret's Products are unfit for human consumption or that she suffered any ill effects from consuming the Products, this cause of action must be dismissed.

### d. Implied Warranty of Fitness.

The implied warranty of fitness, under New York law, requires sellers to provide goods that are fit for a particular purpose where the "purchaser is relying on the seller's skill to furnish suitable goods and the seller at the time of contracting had reason to know of the particular purpose for which the goods are required." *Conductores Monterrey, S.A. de C.V. v. Remee Prods. Corp.*, 2000 WL 1448609, at *8 (S.D.N.Y. Sept. 28, 2000) (citing N.Y. U.C.C. § 2-315).[7]

Plaintiff's claim fails because Pret provided goods that served a reasonable consumer's purpose of purchasing edible food. Plaintiff alleges that her "particular purpose" was to purchase "natural" products, but this is indistinguishable from the ordinary purpose of purchasing food. *See, e.g., Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1050 (S.D. Cal. 2019) (finding that

---

[6] *See also Hoyte*, 489 F. Supp. 2d at 27-28; *Huebner v. Hunter Packing Co.*, 59 Ill. App. 3d 563, 566 (1978); *Hollinger v. Shoppers Paradise of New Jersey, Inc.*, 134 N.J. Super. 328, 338 (Law. Div. 1975), *aff'd*, 142 N.J. Super. 356 (App. Div. 1976).
[7] *See also Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36, 42-43 (D.D.C. 2009); *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 297 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010); *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992); *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007).

the alleged "particular purpose" of "a naturally-flavored food product" was not "peculiar to" plaintiff's use as distinguished from the "ordinary use" of food products). Because Plaintiff has not asserted a particular or specialized purpose for purchasing the Products, this cause of action must also be dismissed.

### C.  Plaintiff's Duplicative Claim for Unjust Enrichment Fails.

Plaintiff's unjust enrichment claim must be dismissed because it is duplicative of Plaintiff's claims for false advertising and breach of express warranty. Under New York law, "[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).[8] "Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (citation and internal quotation marks omitted).[9]

Here, Plaintiff's claim that Pret was unjustly enriched at Plaintiff's expense through payment for the Products duplicates her other claims based on the same facts and alleged misrepresentation that the Products are "natural" and therefore must be dismissed. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (dismissing unjust enrichment claim because plaintiff also asserted claims of deceptive acts, false advertising, and breach of express warranty based on the same misrepresentations that products were "natural");

---

[8] *See also AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 (D.N.J. 2008); *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63–64 (D.C. 2005).

[9] *See also U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 24 (D.D.C. 2007); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466 (D. Mass. 2018); *Cook v. Gen. Nutrition Corp.*, 749 F. App'x 126, 129 (3d Cir. 2018).

*Parks*, 377 F. Supp. 3d at 248-249 (same); *see also Price v. L'Oreal USA, Inc.*, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants. . . . Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017) (dismissing unjust enrichment claim because it "is not a catchall cause of action to be used when others fail") (citation omitted).

Even assuming Plaintiff's claim is not duplicative, Plaintiff does not adequately allege that she did not receive the "benefit of her bargain" when she purchased the Products, which she consumed at no harm to herself. *See, e.g., Marino*, 264 F. Supp. 3d at 572 ("a plaintiff must allege that the benefit he or she received . . . was not what was bargained for."); *In re Fruit Juice*, 831 F. Supp. 2d at 512-13 (finding that "benefit of the bargain" arguments require a showing of actual injury or something more than that the products were "unsatisfactory"). Accordingly, her unjust enrichment claim fails on the merits.

## III.    Plaintiff's Attempt to Apply New York Law to a Nationwide Class Is Improper.

Plaintiff fails to specify under which state's law she is bringing her warranty and unjust enrichment claims, which she purports to bring on behalf of the nationwide class in addition to a New York Sub-class. Pret has assumed that New York law applies—and has noted the status of the law in other relevant States in an abundance of caution—but Plaintiff's failure to specify the governing state law mandates dismissal of her class claims, because it would be improper to apply New York's warranty and unjust enrichment laws to the purported nationwide class. *See, e.g., In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011) (dismissing unspecified unjust enrichment claim pleaded on behalf of nationwide class because "[s]tate law requirements under unjust enrichment law vary widely"); *Romero v. Flowers Bakeries*, LLC, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016) ("due to variances among state laws, failure to

allege which state law governs a common law claim is grounds for dismissal" when such relief is sought on behalf of a nationwide class). Plaintiff cannot shortcut the requisite pleading standards of Fed. R. Civ. P. 8 by asserting claims for unjust enrichment and breach of warranty vaguely, without reference to the applicable law. To the extent Plaintiff is improperly seeking to apply New York law to the purported nationwide class, this is also improper and warrants dismissal of Plaintiff's breach of warranty and unjust enrichment claims.

## IV.    Alternatively, This Case Should Be Stayed Under the Primary Jurisdiction Doctrine.

In the alternative, Plaintiff's claim should be dismissed or stayed under the doctrine of primary jurisdiction because the FDA is in the process of formulating a more concrete definition of the term "natural," including specifically when a product can be labeled as "natural". FDA Natural Policy, 80 Fed Reg. at 69,905-01 (Nov. 12, 2015). The notice and comment period closed in May 2016, and the FDA is now deciding whether or how to regulate use of the term "natural" on food products. *Id.* at 69,908-09. The FDA Commissioner has reaffirmed that the FDA is still actively examining this issue.[10]

A court may exercise its discretion to abstain from hearing a case when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *See In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018) (citation omitted). This Court and its sister court have recently invoked primary jurisdiction to stay similar cases arising from claims of allegedly false or misleading advertisements pending the outcome of the FDA's rulemaking process. *See id.*, *see also In re Kind LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d at 697-

---

[10] *See* https://www.cnbc.com/2018/03/29/fda-to-consider-updating-health-claims-food-manufacturers-can-make.html; Julie Creswell, *Is It 'Natural'? Consumers, and Lawyers, Want to Know*, NY Times at 5 (Feb. 16, 2018).

98 (staying plaintiffs' challenge to use of the phrase "all natural" to describe snack foods allegedly containing synthetic substances); *Scholder v. Riviana Foods Inc.*, 2017 WL 2773586, at *3 (E.D.N.Y. June 23, 2017) (joining "the growing number of courts who have deferred to the FDA's expert and specialized knowledge on this subject, and await pertinent guidance on the permissible uses of the term 'natural' in food labeling"). As in *In re Kind*, and for the same reasons, this Court should again find that, on balance, the Second Circuit's primary jurisdiction test weighs in favor of staying this action pending FDA's related rulemaking. *See In re Kind LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d at 697-98.

## **CONCLUSION**

For the reasons set forth above, Pret respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice, or alternatively, stay the action until the FDA issues guidance regarding the use of the term "natural" in food labeling.

Dated: July 8, 2019

Respectfully submitted,

CROWELL & MORING LLP

By: /s/ Sarah M. Gilbert

Sarah M. Gilbert
Randa Adra
590 Madison Avenue
New York, New York 10022
(212) 223-4000
sgilbert@crowell.com
radra@crowell.com

*Counsel for Defendant Pret A Manger (USA) Limited*