**REESE LLP**
George V. Granade
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Janine Pollack
*pollackj@thesultzerlawgroup.com*
Jeremy Francis
*francisj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKYLAR CUNNINGHAM, *individually on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PRET A MANGER (USA) LIMITED,<br><br>Defendant. | No. 1:19-cv-02322-CM<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY STAY, PLAINTIFF'S SECOND AMENDED COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.  The Court Has Jurisdiction over the Subject Matter of This Case ..................... 3

    A.  Plaintiff Has Suffered a Concrete and Particularized Injury .................. 3

    B.  Plaintiff Has Class Standing ................................................................... 4

    C.  Plaintiff Has Standing to Pursue Injunctive Relief ................................. 7

    D.  The Court Has Subject Matter Jurisdiction Pursuant to the Class Action
        Fairness Act of 2005 ........................................................................... 10

        1.  The SAC Sufficiently Alleges the Amount in Controversy Exceeds
            $5,000,000, Exclusive of Interest and Costs ............................... 10

        2.  Defendant Has Not Carried Its Burden of Showing the Home State
            Exception Applies ..................................................................... 11

        3.  Defendant Has Not Carried Its Burden of Showing the Local
            Controversy Exception Applies ................................................. 13

        4.  Defendant Has Not Carried Its Burden of Showing Why the Court
            Should Exercise Its Discretion to Invoke the Interests of Justice
            Exception ................................................................................... 13

    E.  The Court Should Exercise Supplemental Jurisdiction over Plaintiff's
        Claim for Violation of the Magnuson-Moss Warranty Act .................. 14

II.  The SAC Complaint Sufficiently Pleads Each of Plaintiff's Claims ............... 15

    A.  Reasonable Consumers Can Expect Products Labeled as "Natural" to
        Contain Exclusively Natural Ingredients ............................................. 15

    B.  Reasonable Consumers Can Interpret "Natural" to Mean Free from GMOs ....... 17

    C.  The SAC Sufficiently Pleads Plaintiff's Claims for Breach of Express and
        Implied Warranty ................................................................................. 18

        1.  The SAC Sufficiently Alleges a Claim for Breach of Express
            Warranty ................................................................................... 18

2.      The SAC Sufficiently Alleges a Claim for Violation of the MMWA .................................................................................. 20

3.      The SAC Sufficiently Alleges a Claim for Breach of the Implied Warranty of Merchantability ...................................................... 20

4.      The SAC Sufficiently Alleges a Claim for Breach of the Implied Warranty of Fitness for a Particular Purpose ............................................ 21

D.      The SAC Sufficiently Alleges a Claim for Unjust Enrichment ........................... 21

III.    Pret's Attempt to Strike Plaintiff's Class Claims Is Premature ....................................... 22

IV.     The Primary Jurisdiction Doctrine Does Not Apply ........................................................ 24

CONCLUSION ....................................................................................................................... 25

# **TABLE OF AUTHORITIES**

### CASES

*Abdale v. N. Shore-Long Island Jewish Health Sys*, No. 13-CV-1238(JS)(WDW),
   2014 U.S. Dist. LEXIS 88881 (E.D.N.Y. June 30, 2014) .................................................. 12, 14

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395,
   2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ........................................................ 8

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015) .............................................................................................. 10

*Ault v. J.M. Smucker Co.*, No. 13 CIV 3409 PAC,
   2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ........................................... 17, 18, 19

*Bautista v. Cytosport, Inc.*,
   223 F. Supp. 3d 182 (S.D.N.Y. 2016) ....................................................................................... 6

*Belfiore v. Procter & Gamble Co.*,
   94 F. Supp. 3d 440 (E.D.N.Y. 2015) ......................................................................................... 8

*Bryant v. Food Lion, Inc.*,
   774 F. Supp. 1484 (D.S.C. 1991) ............................................................................................ 23

*Buonasera v. Honest Co.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ....................................................................................... 6

*Chenensky v. NY Life Ins. Co.*,
   2011 WL 1795305 (S.D.N.Y Apr. 27, 2011) ........................................................................... 23

*Chen-Oster v. Goldman, Sachs & Co.*,
   877 F. Supp. 2d 113 (SDNY 2012) .......................................................................................... 23

*Conductores Monterrey, S.A. de C.V. v. Remee Prod. Corp.*, No. 95 CIV. 7925 (BSJ),
   2000 U.S. Dist. LEXIS 14063 (S.D.N.Y. Sept. 28, 2000) ....................................................... 21

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979) ................................................................................................................... 9

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..................................................................................................... 8

*Dayan v. Swiss-Am. Prod., Inc.*, No. 15-cv-06895-DLI-VMS,
   2017 U.S. Dist. LEXIS 1121 (E.D.N.Y. Jan. 3, 2017) ............................................................ 15

*DiMuro v. Clinique Labs., LLC*,
   572 Fed. App'x 27 (2d Cir. 2014) .............................................................................................. 7

*Donahue v. Ferolito, Vultaggio & Sons*,
  786 N.Y.S.2d 153 (App. Div. 2004) ............................................................... 21

*Ebin v. Kangadis Family Mgmt. LLC*,
  45 F. Supp. 3d 395 (S.D.N.Y. 2014) .......................................................... 23, 24

*Foman v. Davis*,
  371 U.S. 178 (1962) ....................................................................................... 25

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................ 16, 19

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) ..................................................................... 9

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
  846 F.2d 848 (2d Cir. 1988) ............................................................................ 25

*Green v. SweetWorks Confections, LLC*, No. 18-cv-00902-LTS-SN,
  2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019) ........................................... 12, 13

*Hasemann v. Gerber Prods*. Co., 15-CV-2995 (MKB),
  2016 U.S. Dist. LEXIS 134019 (E.D.N.Y. Sept. 28, 2016) ........................ 9, 25

*Henry v. Daytop Vill., Inc.*,
  42 F.3d 89 (2d Cir. 1994) ............................................................................... 22

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015) .............................................................. 9

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
  2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015) ............................... 9

*In re Frito-Lay N. Am.*, Inc., 12-MD-2413 (RRM)(RLM),
  2013 U.S. Dist. LEXIS (E.D.N.Y. Aug. 29, 2013) ............................. 5, 18, 19, 25

*In re Fruit Juice Products Marketing & Sales Practices Litigation*,
  831 F. Supp. 2d 507 (D. Mass. 2011) .............................................................. 4

*In re Kind LLC "Healthy & All Natural" Litig.*,
  209 F. Supp. 3d 689 (S.D.N.Y. 2014) ........................................................ 17, 18

*In re Kind LLC "Healthy & All Natural" Litig.*,
  2019 U.S. Dist. LEXIS 21892 (S.D.N.Y. Feb. 11, 2019) ................................. 24

*In re Tronox Sec. Litig.*, No. 09 Civ. 6220,
  2010 U.S. Dist. LEXIS 67664 (S.D.N.Y. June 28, 2010) ................................ 23

*Ironforge.com v. Paychex, Inc.*,
   747 F. Supp. 2d 384 (W.D.N.Y 2010) ................................................................ 23

*John v. Whole Foods Mkt. Grp., Inc.*,
   858 F.3d 732 (2d Cir. 2017) ............................................................................... 3

*Jou v. Kimberly-Clark Corp.*,
   2013 U.S. Dist. LEXIS 173216 (C.D. Cal. Dec. 10, 2013) .................................. 16

*Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK),
   2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ....................................................... 6

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ......................................................................... 5

*Manier v. L'Oreal U.S.A., Inc.*, No. 16-cv-6593,
   2017 U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017) ..................................... 5

*Mayfield v. Asta Funding, Inc.*,
   95 F. Supp. 3d 685 (S.D.N.Y 2015) .............................................................. 22, 23

*Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*,
   829 F. Supp. 35 (E.D.N.Y. 1993) ....................................................................... 20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ......................................................................... 5, 6, 7

*Nicosia v. Amazon.com, Inc.*,
   84 F. Supp. 3d 142 (E.D.N.Y. 2015) ................................................................... 8

*Panda Capital Corp. v. Kopo International, Inc.*,
   662 N.Y.S.2d 584 (App. Div. 1997) .............................................................. 19, 20

*Parker v. J.M. Smucker Co.*, No. C 13-0690 SC,
   2013 U.S. Dist. LEXIS 120374 (N.D. Cal. Aug. 23, 2013) ............................. 17, 18

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019) ................................................................. 16

*Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML,
   2015 U.S. Dist. LEXIS 108165 (E.D.N.Y. Aug. 17, 2015) .................................... 19

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................................ 16

*Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-07735-NSR,
   2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. March 30, 2018) ........................... passim

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
   347 F.3d 394 (2d Cir. 2003)............................................................................. 10, 11

*Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR),
   2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) ............................... 15, 16, 17

*Silva v. Smucker Natural Foods, Inc.*, No. 14-cv-6154-JG-RML,
   2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015)............................. 20, 25

*Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB),
   2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sept. 26, 2016)............................. 15, 20

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)......................................................................................... 3

*St. John's Univ., New York v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) .............................................................. 22

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008)................................................................ 9

*Tsan v. Seventh Generation, Inc*, No. 15-cv-00205-JST,
   2015 U.S. Dist. LEXIS 149042 (N.D. Cal. Nov. 3, 2015)...................................... 17

*Warner v. StarKist Co.*, No. 1:18-vb-00406-GLS-ATB,
   2019 U.S. Dist. LEXIS 48587 (N.D.N.Y. Mar. 25, 2019)................................ 21, 22

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015)................................................................. 4

## Statutes

15 U.S.C. § 2301 ..................................................................................................... 20

15 U.S.C. § 2310 ..................................................................................................... 14

28 U.S.C. § 1332..................................................................................................... 12, 13

28 U.S.C. § 1367 ..................................................................................................... 14

Class Action Fairness Act of 2005,
   Pub. L. No. 109-2, 119 Stat. 4 ........................................................................ 10, 11, 15

Magnuson-Moss Warranty Act,
   15 U.S.C. § 2301 *et seq.*................................................................................... 14, 20

N.Y. C.P.L.R. § 214..................................................................................................... 11

New York General Business Law section 349 ................................................................. 11, 19, 22

New York General Business Law section 350 ..................................................................... 11, 22

New York General Business Law section 350-e ......................................................................... 11

New York UCC section 2-314 ...................................................................................................... 20

New York UCC section 2-607 ...................................................................................................... 19

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 .............................................................................................. 22

Federal Rule of Civil Procedure 12 ......................................................................................... 4, 22

Federal Rule of Civil Procedure 15 ............................................................................................. 25

Federal Rule of Civil Procedure 23 .............................................................................................. 5

U.S. CONST. art. III ...................................................................................................... passim

Plaintiff Skylar Cunningham ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss or, in the Alternative, to Stay the Second Amended Complaint filed by Defendant Pret a Manger (USA) Limited ("Defendant" or "Pret"). *See* Def.'s Notice Mot. Dismiss or Stay Pl.'s Second Am. Compl., ECF No. 29; Mem. Supp. Def.'s Mot. Dismiss or Stay Pl.'s Second Am. Compl., ECF No. 30 ("Mem.").

For the reasons below, Pret's motion is meritless, and the Court should deny it.

## INTRODUCTION

Plaintiff brings a simple claim based on what she believed were simply "Natural" food Products.[1] By representing many of its food Products as "Natural," Pret can, and does, charge a premium price for them. Unfortunately for Plaintiff and other consumers, however, the Products are not actually natural, but rather contain soya, a genetically modified organism ("GMO"), and numerous synthetic ingredients. In its brief, Defendant does not contest that its representations are false. Rather, it contends that this Court lacks subject matter jurisdiction, that Plaintiff does not have Article III or class standing, that Plaintiff's claims are not plausible, and that Plaintiff has not adequately pled the elements of her causes of action. For the reasons that follow, each of those arguments is contrary to case law in this Circuit and should be rejected. Further, there is no basis to grant Defendant's request to stay this case while waiting for the FDA to define "natural" in food labeling and advertising. There is no indication that any such definition is imminent, nor, in any event, would it impact Plaintiff's claims, which are subject to the reasonable consumer standard.

## STATEMENT OF FACTS

Plaintiff, a citizen of New York, purchased Pret's Products, including chips, sandwiches,

---

[1] "Products" has the same meaning as in the Second Amended Complaint. Second Am. Compl. ¶¶ 1, 1 n.1, ECF No. 27 ("SAC").

cookies, and salads, from its stores in New York. SAC ¶ 41. Pret, a corporation, is headquartered in the United Kingdom and has its head office in New York. *Id.* at ¶ 43. According to a declaration Pret submitted with its motion (the "Thorp Declaration"), as of August 12, 2019, it had 87 "locations" in the United States, including 57 in New York, as well as "locations" in Washington, D.C., Illinois, Massachusetts, New Jersey, and Pennsylvania. Decl. Thorp ¶ 3, ECF No. 31.

Pret's logo was prevalently featured on the company's marketing and Product packaging and contains the representation that it sells "Natural Food," as illustrated below:



SAC ¶ 6. Prominent signage in Pret's retail outlets states, "Freshly prepared, good, natural food," *id.* at ¶ 7, and many Product labels state they are made with "natural ingredients." *Id.* at ¶ 8.

Pret's "natural" claims are deceptive because the Products contain GMOs and numerous synthetic ingredients. SAC ¶¶ 10-15. GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant. *Id.* at ¶ 15. The SAC specifically identifies numerous Products that contain soya, which is known to be derived from GMOs and/or synthetically produced. *Id.* at ¶¶ 12, 15. The Products also contain synthetic ingredients including maltodextrin (Pret Salt & Vinegar Chips), citric acid (Pret Salt & Vinegar Chips, Pret BBQ Chips, Pure Pret Ginger Beer), lactic acid (Pret Salt & Vinegar Chips), and malic acid (Pret Salt & Vinegar Chips). *Id.* at ¶ 10. In addition, the bread in the sandwich Products contains diacetyl tartaric acid esters of mono- and diglycerides, mono- and diglycerides of fatty acids, and ascorbic acid, all of which are synthetic. *Id.* at ¶ 11.

## ARGUMENT

### I.     The Court Has Jurisdiction over the Subject Matter of This Case

#### A.     Plaintiff Has Suffered a Concrete and Particularized Injury

Plaintiff has satisfied the injury in fact element of Article III standing by alleging she paid more for Defendant's Products based on the false "natural" representation than she otherwise would have paid. The United States Court of Appeals for the Second Circuit has held that payment of such a price premium constitutes a "particularized and concrete" injury. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("[O]verpaying for a product results in a financial loss constituting a particularized and concrete injury in fact."); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Defendant contends Ms. Cunningham fails to allege a particularized injury because she does not specifically allege she purchased Products containing the challenged substances. Mem. 5-6. That is incorrect. The SAC identifies each of the Products that Plaintiff alleges contains soya and other synthetic ingredients. SAC ¶¶ 10, 15. And the SAC alleges Ms. Cunningham purchased "various chips, sandwiches, cookies, and salads" listed in the pleading. SAC ¶ 41. Thus, Plaintiff has, in fact, alleged she purchased Products that contain the challenged substances (both soya and other synthetic ingredients). That Plaintiff has not identified the specific Products she purchased in no way deprives her of standing to pursue her claims given that, as set forth below, the same deceptive "natural" representation applies to each of the Products identified in the SAC.

Next, Defendant argues Plaintiff lacks standing because she has not performed "any testing" to support her allegations. Mem. 6-7. Defendant does not deny that the Products contain GMOs or synthetic ingredients but, instead, contends the SAC is deficient because Plaintiff has not specifically identified how she knows what is in the Products. This argument is disingenuous

given that the Product ingredients are known to Defendant and publicly available on its website. Defendant's website, of which this Court can take judicial notice, clearly indicates the challenged Products contain either soy or a litany of other synthetic ingredients, despite being prominently advertised as "natural." *See* https://delivery.pret.com/en_US/our-menu/ (showing that the salads, sandwiches, cookies, and pastries identified in SAC ¶ 15 contain soy); https://pret-files.azureedge.net/pretamanger-usa/08873-01-us-allergen-guide/Allergen-Guide-Oct-1-2019-DC-IL-MA-NJ-NY-PA.pdf (listing the synthetic ingredients in the chip and soda Products identified in SAC ¶ 10); *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.").

Pret's reliance on *In re Fruit Juice Products Marketing & Sales Practices Litigation*, 831 F. Supp. 2d 507 (D. Mass. 2011) ("*Fruit Juice*"), is misplaced. *See* Mem. 6. While in that case, the plaintiffs "paid for fruit juice, and they received fruit juice," *Fruit Juice*, 831 F. Supp. 2d at 512, here, Plaintiff paid for "natural" Products but did not receive Products that were "natural."

### B. Plaintiff Has Class Standing

Pret contends that because Plaintiff lacks Article III standing, she cannot pursue claims on behalf of the class. Mem. 7. But, as set forth above, because Plaintiff purchased Defendant's Products that contained synthetic ingredients and GMOs, despite being advertised as "natural," she has suffered a concrete injury and has satisfied the standing requirements of Article III.

Whether Ms. Cunningham can represent other members of the class who may have purchased different Pret Products is an issue that courts determine at the class certification stage and is not appropriate for resolution on a motion to dismiss. Class standing should not be resolved

prior to certification because the analysis for class standing significantly overlaps the typicality, commonality, and adequacy requirements under Rule 23. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 543 (E.D.N.Y. 2017) (finding class standing at class certification stage "for the same reasons [plaintiff's] claim is typical"). For this reason, many courts have held that the issue of class standing should be deferred to the class certification stage and not resolved on a motion to dismiss. *See, e.g.*, *Manier v. L'Oreal U.S.A., Inc.*, No. 16-cv-6593, 2017 U.S. Dist. LEXIS 116139, at *20 (S.D.N.Y. July 17, 2017) (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("*NECA-IBEW*"), and holding defendant's challenge to class standing appropriately addressed at class certification, not pleading, stage).

Further, several courts have interpreted the Second Circuit's decision in *NECA-IBEW* as limiting the inquiry at the pleading stage to Article III standing and ***requiring*** the class standing analysis to wait until class certification. *See, e.g.*, *Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-07735-NSR, 2018 U.S. Dist. LEXIS 55818, at *13 (S.D.N.Y. March 30, 2018) (holding that the court was "compelled to follow the approach of other decisions in this circuit and the Court's own precedent" and declining to analyze standing to challenge unpurchased products at the motion to dismiss phase); *In re Frito-Lay N. Am.*, Inc., 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS, at *40 (E.D.N.Y. Aug. 29, 2013) ("*In re Frito-Lay*") ("*NECA-IBEW* thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.").

Even if the Court were to engage in an analysis regarding the unpurchased Products at this stage, Plaintiff has standing to challenge the advertising of those Products which is identical to that of the Products she did buy. In *NECA-IBEW*, the Second Circuit held that class standing exists so

long as "defendant's conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendant." *NECA-IBEW*, 693 F.3d at 162. Following from this principle, "a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false and deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff *did* purchase." *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016).

Courts have found food and cosmetic products that make similar representations on their labels across product lines "sufficiently similar" to satisfy class standing at the pleading stage. *See, e.g.*, *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) ("Although the unpurchased products may contain different ingredients compared to the purchased products . . . the misrepresentation claimed with respect to the unpurchased products ['all natural', 'naturally derived', 'plant based'] is sufficiently similar to the misrepresentation for the purchased products ['natural' and 'no harsh chemicals ever!']."); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *10 (S.D.N.Y. Aug. 12, 2016) (citing *NECA-IBEW* and concluding that differences in the advertisements of a line of dog treats that featured bacon did not eliminate subject matter jurisdiction).

Here, there is no difference in the misrepresentations regarding the Products Ms. Cunningham purchased and those she did not. Pret customers who purchased *any* Product in a Pret store were exposed to the identical "Natural Foods" representation. SAC ¶¶ 6-8. (The sandwich Products identified in the SAC are labeled as containing "natural ingredients," but those Products are also labeled as "Natural Food," and therefore class members who purchased those Products were exposed to the same misrepresentation as all other Pret customers.)

6

The nearly identical representations on the purchased and unpurchased Products in this case make it readily distinguishable from *DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27 (2d Cir. 2014) (summary order), upon which Defendant relies, *see* Mem. 7, because in *DiMuro*, the defendant made numerous different advertising claims for each product. *DiMuro*, 572 Fed. App'x at 29. The court in *DiMuro* itself distinguished these cumbersome facts from the "nearly identical" misrepresentations in *NECA-IBEW*. *Id.*

In accordance with the foregoing, while class standing is an issue appropriate for resolution at the class certification stage, the Court can rule now, if it is so inclined, that the unpurchased Products are "substantially similar" to the purchased Products.

**C.      Plaintiff Has Standing to Pursue Injunctive Relief**

Plaintiff has standing to pursue injunctive relief because the inability of Plaintiff to rely on the Products' labels in the future constitutes a threat of future harm, and Plaintiff has alleged that she would buy the Products in the future if they were in fact "natural."

Recently, in *Petrosino v. Stearn's Products, Inc.*, the court held that "a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the accused products in the future." The court continued, "'if magic words are required,' a Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled." *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *11. Like the plaintiff in *Petrosino*, Ms. Cunningham has alleged she would purchase the Products in the future if they were actually "natural" as represented on the labels. SAC ¶ 41.

Some courts adopt Defendant's argument and reason that since the plaintiff knows about the misrepresentations, she is in no danger of being deceived in the future and lacks standing. *See*

Mem. 8-9 (citing, *e.g.*, *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015)). However, many courts conclude that the inability to rely on the labels in the future constitutes a threat of harm, or that a contrary holding would mean no one would ever have standing to pursue injunctive relief. *See Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *11 ("The fact that 'Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm.'"); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232, at *56 (E.D.N.Y. July 17, 2013) (same).

The only appellate court to squarely address this issue is the United States Court of Appeals for the Ninth Circuit in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). As in the Second Circuit, there was a similar ("dramatic") split in the Ninth Circuit, which the court squarely addressed:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Davidson*, 889 F.3d at 969. The court reasoned that:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

*Id.* at 969-70 (footnote omitted).

Indeed, in the cases cited by Defendant, it was the absence of an allegation such as that in paragraph 41 of the SAC that supported the finding that standing did not exist. *See, e.g.*, *Hasemann v. Gerber Prods*. Co., 15-CV-2995 (MKB), 2016 U.S. Dist. LEXIS 134019, at *34 (E.D.N.Y. Sept. 28, 2016) (plaintiffs lacked standing to pursue injunctive relief because they "have not alleged that they continue to purchase the Infant Formula or that they will purchase the Infant Formula in the future"); *Hidalgo v. Johnson & Johnson Consumer Cos*., 148 F. Supp. 3d 285, 296 (S.D.N.Y. 2015) (dismissing claim for injunctive relief because the "complaint contains no allegations that Hidalgo intends to purchase the Bedtime Products again."); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig*., 2015 U.S. Dist. LEXIS 133484, at *22 (S.D.N.Y. Sept. 30, 2015) ("Plaintiffs are unlikely to buy the class products again, and do not allege otherwise in their complaint. Accordingly, they lack standing to seek a forward-looking injunction."). Plaintiff, in contrast, specifically alleges she would buy the Products again in the future. SAC ¶ 41. Accordingly, even under the reasoning of the foregoing district courts, Plaintiff has satisfied Article III. *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected" was "sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Finally, Defendant's alleged efforts to remove the "Natural" advertising do not deprive Plaintiff of standing to pursue injunctive relief. *See* Mem. 9. As a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Tiffany (NJ) Inc. v. eBay, Inc*., 576 F. Supp. 2d 463 (S.D.N.Y. 2008) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Although a case may

become moot "if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated, this burden is a heavy one," and it has not been met here. By Pret's own admission, the "Natural" claim has not been completely removed from its stores. *See* Decl. Thorp ¶ 6 (stating that "natural" advertising has been removed in "virtually all" stores and packaging).

*Ault v. J.M. Smucker Co.*, 310 F.R.D. 59 (S.D.N.Y. 2015), which Pret cites, Mem. 9, is inapposite because it was decided in the context of a motion for class certification, not a motion to dismiss, and says nothing about standing to pursue injunctive relief. *Ault*, 310 F.R.D. at 68.

### D. The Court Has Subject Matter Jurisdiction Pursuant to the Class Action Fairness Act of 2005

#### 1. The SAC Sufficiently Alleges the Amount in Controversy Exceeds $5,000,000, Exclusive of Interest and Costs

Pret argues Plaintiff has not shown the Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA") (codified in scattered sections of Title 28 of the *United States Code*), because she has not adequately alleged the CAFA $5 million amount-in-controversy requirement is met. Mem. 10. The Court should reject Pret's argument because it is reasonably probable from the face of the SAC that well over $5,000,000 in statutory damages alone are at issue.

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). "This burden is hardly onerous, however, for [courts in the Second Circuit] recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Id.* "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the

jurisdictional threshold." *Id.* The Second Circuit has "set a high bar for overcoming this presumption." *Id.* "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.*

Here, CAFA's amount-in-controversy requirement is satisfied because Plaintiff and the New York class members seek statutory damages of $500 per Product sale pursuant to New York General Business Law section 350. *See* N.Y. GEN. BUS. LAW § 350-e(3). To show that at least $5,000,000 in statutory damages are at issue under section 350, Plaintiff need only show that 10,000 New York Product sales took place during section 350's three-year statute of limitations period. *See* N.Y. C.P.L.R. § 214(2). Plaintiff alleges Pret has approximately 55 New York locations, SAC ¶ 43, and Pret admits it owns and operates 57 New York locations, Decl. Thorp ¶ 3. Consequently, if there have been at least 182 Product purchases per New York location, then there have been at least 10,010 New York Product purchases, and there are at least $5,005,000 in statutory damages at issue under section 350. Because the proposition that Pret has not made at least 182 Product sales per New York location during the three-year limitations period is simply not believable, the Court should reject Pret's argument that Plaintiff has not shown CAFA's amount-in-controversy requirement is satisfied.

Pret's argument that Plaintiff and the class members may only obtain price premiums of "mere cents," Mem. 10, ignores the availability of statutory damages under New York General Business Law sections 350-e(3) and 349(h) and, consequently, falls far short of establishing "to a legal certainty" that the amount-in-controversy requirement is not met. *Scherer*, 347 F.3d at 397.

### 2. Defendant Has Not Carried Its Burden of Showing the Home State Exception Applies

"A party seeking to avail itself of an exception to CAFA jurisdiction bears the burden of proving that the exception applies." *Green v. SweetWorks Confections, LLC*, No. 18-cv-00902-

LTS-SN, 2019 WL 3958442, at *3 (S.D.N.Y. Aug. 21, 2019). "Under the 'home state controversy' exception, a district court 'shall decline to exercise jurisdiction' if 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Id.*; 28 U.S.C. § 1332(d)(4)(B). Pret argues the home state controversy exception applies because it and more than two-thirds of the putative class members are New York citizens. Mem. 11. In support, Pret cites the Thorp Declaration for the proposition that at least 72 percent of its sales and transactions took place in New York. *Id.* (citing Decl. Thorp ¶¶ 3-5).

The Court should reject Pret's argument because the Thorp Declaration does not establish with any level of certainty that at least two-thirds of the putative class members are New York citizens. First, the Thorp Declaration does not establish *the citizenship* of any Product purchaser, and substantial numbers of non-New Yorkers visit New York each year. NYC & Company reports that in 2018, 65.1 million people visited New York City, and in 2017, 62.8 million people visited (https://assets.simpleviewinc.com/simpleview/image/upload/v1/clients/newyorkcity/NYC_Travel_Tourism_Overview_2018_99a0bd25-71b4-40b3-a86f-aba7951b0cf9.pdf). Consequently, the Court cannot be sure of the citizenship of the Product purchasers based on Mr. Thorp's sales data alone and cannot be sure that the two-thirds threshold required by the home state exception is met. *See Abdale v. N. Shore-Long Island Jewish Health Sys*, No. 13-CV-1238(JS)(WDW), 2014 U.S. Dist. LEXIS 88881, at *30 (E.D.N.Y. June 30, 2014) (holding defendant's data "says nothing about the citizenship of [the class members]," that it was "probable that a portion of these [class members] consist of individuals who reside in New York, but who are not domiciled in New York, and therefore are not New York citizens (e.g., an out-of-state college student)," and that "based only on these New York connections, it does not necessarily follow that two-thirds, or even one-

third, of the putative class is made up of New York citizens."). Second, paragraph 5 of the Thorp

Declaration says nothing about the number of transactions *involving the Products at issue* that took

place in New York and thus is of little utility in determining the citizenship of the class members.

> **3.    Defendant Has Not Carried Its Burden of Showing the Local Controversy Exception Applies**

"Under the 'local controversy' exception, a district court must decline jurisdiction if '(1)

more than two-thirds of the putative class members are citizens of the state in which the action was

originally filed; (2) there is at least one defendant from whom "significant relief" is sought by the

class members, whose alleged conduct forms a "significant basis" for the asserted claims, and who

is a citizen of the state in which the action was originally filed; (3) the principal injuries suffered

by the class were incurred in the state in which the action was originally filed; and (4) no other

class action asserting the same or similar factual allegations has been filed against any of the

defendants within the past three years.'" *Green*, 2019 WL 3958442, at *3; § 1332(d)(4)(A). Pret's

arguments in favor of application of the local controversy exception closely resemble its arguments

in favor of application of the home state exception, Mem. 11-12, and the Court should reject them

for the reasons given above. *See supra* § I.D.2.

> **4.    Defendant Has Not Carried Its Burden of Showing Why the Court Should Exercise Its Discretion to Invoke the Interests of Justice Exception**

"[U]nder the 'interests of justice' exception, the court may, in the 'interests of justice' and

after examining the totality of the circumstances, 'decline to exercise jurisdiction in class actions

in which more than one-third but less than two-thirds of the members of the putative class and the

primary defendants are citizens of the state in which the action was originally filed, based upon

consideration' of the factors enumerated in 28 U.S.C. § 1332(d)(3)." *Green*, 2019 WL 3958442,

at *3; § 1332(d)(3). For the reasons given above, the Thorp Declaration fails to establish with any

level of certainty how many of the class members are New York citizens. *See supra* § I.D.2. Pret also argues the New York subclass "acknowledg[es] the large number of New York class members" and points out that New York law is the only state law that the SAC specifically identifies. Mem. 13. These circumstances result from the simple fact that Plaintiff is a New York citizen, however, and not from any concession on Plaintiff's part regarding the citizenship of the class members. As in *Abdale*, Pret's argument is "somewhat speculative," and the Court should not rely upon it as a basis to dismiss the case. *See Abdale*, 2014 U.S. Dist. LEXIS 88881, at *30.

Because Defendant has not carried its burden to show that any CAFA exception applies, the Court need consider the issue no further. If, however, the Court believes Pret's argument merits additional analysis, Plaintiff respectfully requests that the Court allow the parties to conduct jurisdictional discovery, so that Plaintiff may, among other things, explore the basis for Mr. Thorp's factual assertions, including the underlying data, and further develop the factual record regarding the citizenship of the putative class members (particularly because significant information regarding the Product sales is likely uniquely within the possession of Pret).

### E.     The Court Should Exercise Supplemental Jurisdiction over Plaintiff's Claim for Violation of the Magnuson-Moss Warranty Act

Pret argues the Court lacks jurisdiction over Plaintiff's claim for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"), because two of the jurisdictional requirements in 15 U.S.C. § 2310(d)(3) are unmet, namely, the SAC does not name at least 100 plaintiffs and Plaintiff does not allege that her individual claim exceeds the sum or value of $25. Mem. 13-14, 14 n.2. Pret ignores that Plaintiff has not invoked subject matter jurisdiction on the basis of the MMWA and, as a result, § 2310(d)(3) does not apply. Instead, the Court may exercise supplemental jurisdiction over Plaintiff's MMWA claim pursuant to 28 U.S.C. § 1367(a) because Plaintiff's MMWA claim stems from the same common nucleus of operative

fact as Plaintiff's other claims, over which the Court has jurisdiction pursuant to CAFA. *See Dayan v. Swiss-Am. Prod., Inc.*, No. 15-cv-06895-DLI-VMS, 2017 U.S. Dist. LEXIS 1121, at *32 (E.D.N.Y. Jan. 3, 2017) ("In short, consistent with the Courts of Appeals and several district courts that have addressed the issue, the Court believes that where, as here, the jurisdictional prerequisites of CAFA are satisfied, the Court may exercise subject-matter jurisdiction over a claim under the MMWA although the jurisdictional prerequisites of that statute may not be met.").

## II.    The SAC Complaint Sufficiently Pleads Each of Plaintiff's Claims

As set forth in Section I.A., *supra*, Plaintiff adequately alleges Pret's Products contain soy and the other ingredients identified in the SAC. Moreover, the allegations are sufficient to plead that the identified ingredients are synthetic or GMO. *See Segedie v. Hain Celestial Grp., Inc*., No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *30 (S.D.N.Y. May 7, 2015) ("[I]t is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients."); *see also* SAC ¶ 10. As set forth below, because the Products contain synthetic ingredients and GMOs, a reasonable consumer can be misled by Defendant's "natural" advertising.

### A.    Reasonable Consumers Can Expect Products Labeled as "Natural" to Contain Exclusively Natural Ingredients

Pret's contention that a reasonable consumer cannot expect a product labeled "Natural" to be free of synthetic ingredients is refuted by a review of the Second Circuit case law. Courts in the Second Circuit have repeatedly found no legally significant difference between "all natural" or "100% natural" and "natural" representations, and each communicates to a reasonable consumer that the product at issue contains exclusively natural ingredients. *See Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *43-44 (E.D.N.Y. Sept. 26, 2016) (holding that "although Defendants are correct that [their] representations do not promise that the Product is 'all' or '100%' natural, a reasonable consumer could assume that the Product contains

only natural ingredients . . . The fact that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not 'natural' does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (rejecting motion and holding that a reasonable consumer could interpret "Active Naturals" to mean the product was completely natural).

Pret seeks to avoid the nearly unanimous Second Circuit case law on this point by citing to *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019), and *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013). *See* Mem. 16. In *Parks*, the court held that trace amounts of glyphosate did not render a "natural" claim deceptive given "the widespread use of herbicides." *Parks*, 377 F. Supp. 3d at 247. Here, Plaintiff's allegations involve intentionally added synthetic ingredients and GMOs, not contaminants from herbicides. *Pelayo* is out-of-circuit and non-binding, and its underlying reasoning has been soundly rejected by other courts, including the Southern District of New York. *See, e.g.*, *Segedie*, 2015 U.S. Dist. LEXIS 60739, *30-31 (distinguishing *Pelayo* and holding that "it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients"); *Jou v. Kimberly-Clark Corp.*, 2013 U.S. Dist. LEXIS 173216, at *30-81 (C.D. Cal. Dec. 10, 2013) (holding that *Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit").

Moreover, contrary to Defendant's contention (Mem. 16), Plaintiff's references to the organic food regulations in the SAC are a guide to what a reasonable consumer would consider "natural," and they bolster, rather than impair, the adequacy of Plaintiff's pleadings. *See Tsan v. Seventh Generation, Inc*, No. 15-cv-00205-JST, 2015 U.S. Dist. LEXIS 149042, at *14-15 (N.D.

Cal. Nov. 3, 2015) ("Plaintiffs look to USDA and NPA sources only for guidance as to what reasonable consumers would consider 'natural', and allege that a reasonable consumer would consider products labeled 'natural' to be free of 'synthetic, highly processed, and/or non-natural ingredients."). The fact that some of the synthetic ingredients in the Products are permitted in organic foods is irrelevant to how a reasonable consumer would interpret Defendant's "natural" advertising. *Segedie*, 2015 U.S. Dist. LEXIS 60739, *29-30 ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients . . . This is true even though foods labeled 'organic' may lawfully contain some synthetic ingredients. There is no rigid hierarchy that makes 'natural' a more permissive label than 'organic' in all respects as a matter of law.").

## B.     Reasonable Consumers Can Interpret "Natural" to Mean Free from GMOs

Pret's representation that the Products are "natural" is also deceptive because many of the Products contain GMO and/or synthetically produced soya. SAC ¶¶ 12-15. Plaintiff's allegation that soya is well known to be a GMO is sufficient for the Court to infer that the soya in Pret's Products is genetically modified. *See Ault v. J.M. Smucker Co.*, No. 13 CIV. 3409 PAC, 2014 U.S. Dist. LEXIS 67118, at *16-17 (S.D.N.Y. May 15, 2014) ("While Plaintiff is not certain Crisco Oil contains GMOs, the factual allegations—taken as a whole—are more than sufficient 'to raise a right to relief above the speculative level.'"); *In re Kind LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2014) ("*In re Kind*") (finding that plaintiff could properly plead that defendant's product contained GMOs based, in part, on the allegation that 89% of corn in the United States is derived from genetically-modified ingredients); *Parker v. J.M. Smucker Co.*, No. C 13-0690 SC, 2013 U.S. Dist. LEXIS 120374, at *7 (N.D. Cal. Aug. 23, 2013) (holding that an allegation that "[o]ver 70% of U.S. corn, over 90% of U.S. soy, and over 80% of U.S. canola crops

are [genetically modified]" was sufficient to plead that defendant's products contained GMOs).

In its motion, Pret does not directly dispute Plaintiff's allegations that its Products contain genetically modified soya. Instead, it cites FDA guidance stating that the FDA's policies regarding the use of the term "natural" were not meant to apply to GMOs. Mem. 17. But the FDA's views on the meaning of "natural" are not a substitute for the reasonable consumer test. In *Ault*, the defendant similarly argued that a reasonable consumer would not be misled by the product's "All Natural" label "in light of the FDA's policy on bioengineered ingredients and the federal government's regulations governing organic foods." *Ault*, 2014 U.S. Dist. LEXIS 67118, at *18-19. The court held that this argument "misses the mark" because "while any FDA views on what 'natural' means may be relevant to this inquiry, they are not dispositive." *Id.*; *see also In re Kind*, 209 F. Supp. 3d at 697 (stating that "some consumers may seek to avoid GMO-derived food, regardless of what the FDA says about their safety").

Reasonable consumers can interpret the representation that the Products are "natural" to mean that they are free from GMOs, which are plants grown from seeds in which DNA splicing has been used to place genes from another source into a plant. SAC ¶ 15. *See In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *54 (concluding that the phrase "Made with ALL NATURAL ingredients" could mislead a consumer into believing product was GMO-free); *Ault*, 2014 U.S. Dist. LEXIS 67118, at *18-19 ("[I]t is not unreasonable, as a matter of law, for a consumer to believe that non-organic foods labeled as 'All Natural' do not possess GMOs."); *Parker*, 2013 U.S. Dist. LEXIS 120374, at *19 (same).

### C.  The SAC Sufficiently Pleads Plaintiff's Claims for Breach of Express and Implied Warranty

#### 1.  The SAC Sufficiently Alleges a Claim for Breach of Express Warranty

Pret argues Plaintiff has not sufficiently pled the elements of a claim for breach of express

warranty. Pret first contends the term "natural" is not an express warranty. Mem. 2, 18-19. Courts

in the Second Circuit, however, have repeatedly held that "natural" labeling on food products "can

constitute an actionable warranty under New York law." *See e.g.*, *Ault*, 2014 U.S. Dist. LEXIS

67118, at *20 ("All Natural" labeling of Crisco Oil was "actionable warranty"); *In re Frito-Lay*,

2013 U.S. Dist. LEXIS 123824, at *85 (E.D.N.Y. Aug. 29, 2013) (potato chip products labeled

"All Natural"); *see also Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 U.S. Dist.

LEXIS 108165, at *7 (E.D.N.Y. Aug. 17, 2015) (personal care products labeled "Suave Naturals");

*Goldemberg*, 8 F. Supp. 3d at 482-83 (personal care products labeled "Active Naturals").

Pret also argues Plaintiff has insufficiently alleged a breach. Mem. 19. For the reasons

asserted in Section II.A, *supra*, Pret's "natural" claims are deceptive inasmuch as a consumer can

reasonably interpret Defendant's "natural" advertising to mean the Products are free from synthetic

ingredients and GMOs, which they are not. *See Goldemberg*, 8 F. Supp. 3d at 483 ("[A]s the Court

is unable to determine as a matter of law that the statements are not misleading under GBL § 349,

it is equally inappropriate to determine they are not misleading for the warranty claim.").

Finally, Pret argues the notice requirement is unmet. Mem. 19. However, Plaintiff's

complaint itself and the subsequent amendments can serve as adequate notice of Defendant's

breach of express warranties. In *Panda Capital Corp. v. Kopo International, Inc.*, 662 N.Y.S.2d

584 (App. Div. 1997), the defendant agreed to deliver steel products to the plaintiff, who brought

suit alleging various breaches. The defendant argued it had not received timely notice of the alleged

breaches, as required by New York UCC section 2-607. To this, the Second Department stated:

> This argument overlooks the fact that the complaint and subsequent amended
> complaint in this action themselves constituted such notice, and that the plaintiff
> had repeatedly made its objections to [the defendant's] pattern of deficient
> performance known prior to the shipments reflected in the invoices. Under these
> circumstances, it is at the very least an issue of fact as to whether reasonably timely
> notice of breach was given.

*Panda Capital Corp.*, 662 N.Y.S.2d at 586-87 (citations omitted).

### 2.    The SAC Sufficiently Alleges a Claim for Violation of the MMWA

Pret argues Plaintiff has not stated a claim for violation of the MMWA because the term "natural" on a food product label is not a "written warranty" under the MMWA. Mem. 19-20; *see* 15 U.S.C. § 2301(6)(A). But because Plaintiff has stated a claim for breach of express warranty under New York state law, *see supra* § II.B.1, she has also pled a violation of the MMWA. The MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *55.

### 3.    The SAC Sufficiently Alleges a Claim for Breach of the Implied Warranty of Merchantability

Pret next argues Plaintiff has not stated a claim for breach of the implied warranty of merchantability because she does not allege any of the Products are unfit for human consumption or that she suffered any ill effects from consuming the Products. Mem. 21. But fitness for human consumption is not the entirety of the standard for merchantability. To be merchantable, goods must also "conform to the promises or affirmations of fact made on the container or label if any," N.Y. U.C.C. LAW § 2-314(2)(f), which Defendant's Products do not. *See supra* § II.A; *Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 829 F. Supp. 35, 36-38, 40-41 (E.D.N.Y. 1993) (holding that the defendant had breached the implied warranty of merchantability because the fragrance products at issue did not "conform to the promises or affirmations of fact made on the[ir] container[s] or label[s]" that they were "Drakkar Noir").

*Silva v. Smucker Natural Foods, Inc.*, No. 14-cv-6154-JG-RML, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015), which Pret cites, *see* Mem. 20-21, does not explain why it was necessary for the plaintiff to show a violation of more than one prong of New York UCC section 2-314(2) to state a claim. *Silva*, 2015 U.S. Dist. LEXIS 122186, at *29 (acknowledging that

complaint asserted product "[did] not conform to the promises made on its containers, labels, and literature," but nevertheless dismissing implied warranty claim for failure to allege product was unfit for human consumption). Pret's reliance on *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153 (App. Div. 2004), *see* Mem. 21, is misplaced because there, "the labels contained no affirmation of fact or promise by defendants" that the plaintiffs challenged, unlike the Product labels here, which make the "natural" claims at issue. *See Donahue*, 786 N.Y.S.2d at 155.

### 4. The SAC Sufficiently Alleges a Claim for Breach of the Implied Warranty of Fitness for a Particular Purpose

Pret argues Plaintiff has not stated a claim for breach of the implied warranty of fitness for a particular purpose because the Products "served a reasonable consumer's purpose of purchasing edible food," and Plaintiff has not asserted a particular or specialized purpose for purchasing the Products. Mem. 21-22. The Court should reject Pret's argument because Plaintiff has alleged she sought Products that met particular specifications, namely, that the Products would be "natural," and that Pret was aware of the specifications because it labeled and marketed the Products as "natural," but Plaintiff received Products that failed to conform to the specifications (as they were not, in fact, natural). *See Conductores Monterrey, S.A. de C.V. v. Remee Prod. Corp.*, No. 95 CIV. 7925 (BSJ), 2000 U.S. Dist. LEXIS 14063, at *25 (S.D.N.Y. Sept. 28, 2000) (holding that defendant "breached the warranty of fitness for a particular purpose by delivering goods that did not meet the required specifications").

### D. The SAC Sufficiently Alleges a Claim for Unjust Enrichment

Pret argues the Court should dismiss Plaintiff's unjust enrichment claim because it duplicates her claims for false advertising and breach of express warranty. Mem. 22-23. But, as the court recently explained in *Warner v. StarKist Co.*:

[Defendant] argues that [plaintiff's] unjust enrichment claim must be dismissed

> because it is duplicative of his GBL claims. . . . [Defendant] fails to persuade the
> court that this claim should be dismissed at this stage. The elements for an unjust
> enrichment claim are distinct from the elements for GBL claims under §§ 349 and
> 350. . . . Thus, "a 'reasonable trier of fact could find unjust enrichment . . . without
> establishing all the elements for one of [plaintiff's other] claims sounding in law.'"

*Warner v. StarKist Co.*, No. 1:18-vb-00406-GLS-ATB, 2019 U.S. Dist. LEXIS 48587, at *6-7

(N.D.N.Y. Mar. 25, 2019) (citations omitted).

Furthermore, dismissal is inappropriate at this stage because "[t]he Federal Rules of Civil

Procedure explicitly permit Plaintiff to assert claims in the alternative," regardless of consistency.

*St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); FED. R. CIV. P.

8(d)(2); FED. R. CIV. P. 8(d)(3); *see Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).

Pret also argues Plaintiff has not adequately alleged she did not receive the benefit of her

bargain when she purchased the Products. Mem. 23. However, Plaintiff alleges she bargained and

paid for "natural" Products, but the Products she received were not, in fact, natural. SAC ¶¶ 6-15,

32-36, 41-4.

## III.    Pret's Attempt to Strike Plaintiff's Class Claims Is Premature

Defendant asks the Court to dismiss Plaintiff's warranty and unjust enrichment claims on

the grounds that they do not specify the state law under which Plaintiff is proceeding and because

New York law cannot apply to the nationwide class due to variances among state laws. Mem. 23-

24. While not identified as such, Defendant's motion is, in essence, a motion to strike Plaintiff's

national class allegations pursuant to Rule 12(f). However, Defendant cannot meet the

extraordinarily high burden associated with seeking to strike class allegations at the pleading stage.

When a defendant makes a motion to strike class allegations before class discovery has been

concluded (let alone started), the defendant bears the burden to "demonstrate from the face of the

complaint that it would be impossible to certify the alleged class regardless of the facts plaintiffs

may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y 2015) (citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)).

Here, Defendant has not merely moved to dismiss the nationwide class allegations before discovery; it has moved to dismiss the nationwide class allegations before it has even answered the SAC. There are numerous decisions in this Circuit noting that motions to strike are disfavored, and should be granted "only when there is a strong reason for doing so." *See, e.g.*, *In re Tronox Sec. Litig.*, No. 09 Civ. 6220, 2010 U.S. Dist. LEXIS 67664, at *13 (S.D.N.Y. June 28, 2010). Moreover, "[a] motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Chenensky v. NY Life Ins. Co.*, 2011 WL 1795305, at *4 (S.D.N.Y Apr. 27, 2011) (quoting *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y 2010)). Thus, unless a motion to strike class allegations "addresses issues separate and apart from the issues that will be decided on a class certification motion," the motion should be denied as premature. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (SDNY 2012). Here, Defendant's request to limit the class is premature and should be decided within the context of a class certification motion.

With respect to each of the warranty and unjust enrichment claims, Defendant argues that there should not be nationwide class certification because of variations among the state laws. Mem. 24. However, as noted in *Ebin v. Kangadis Family Management LLC*, variations in the laws of the different states do not preclude class certification, and certainly do not justify striking nationwide class allegations at the pleadings stage. *Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395, 399 (S.D.N.Y. 2014) ("[T]he Court finds that while some variation exists among states in the

common law of fraud and negligent misrepresentation, when applied to the facts of this particular

case any such variation is unlikely to lead to actual variation in adjudication of liability."). Pret has

not shown from the face of the SAC that it would be impossible for Plaintiff to make the requisite

showing to support class certification. Rather, Pret's argument broadly concludes, without offering

any analysis of the state laws at issue, that state warranty and unjust enrichment laws are materially

different from one another. Mem. 24. Because Defendant has not met the high burden for striking

Plaintiff's non-New York allegations, these claims should not be dismissed.

Plaintiff notes that even if the Court ultimately denies certification of nationwide classes

for these claims, all are pled "in the alternative" as New York Subclasses. Defendant makes no

argument as to the New York Subclasses, nor could it.

## IV.   The Primary Jurisdiction Doctrine Does Not Apply

Pret requests that Plaintiff's claims be dismissed or stayed under the doctrine of primary

jurisdiction. Mem. 24-25. But there is no basis for a stay in this case. First, the FDA has given no

indication that any regulations governing "natural" foods are imminent. As Pret notes, the notice

and comment period on the proposed FDA Natural Policy ended more than three years ago, in

May 2016, and the FDA has yet to promulgate a definition of "natural." In fact, the Southern

District of New York recently lifted a stay in a "natural" labeling case because the FDA had not

taken any affirmative steps to define "natural" and had given no indication that it planned to do so

in the near future. *In re Kind LLC "Healthy & All Natural" Litig.*, 15-MD-2645 (WHP), 2019 U.S.

Dist. LEXIS 21892, at *12 (S.D.N.Y. Feb. 11, 2019).

Second, as in other "natural" labeling cases, the primary jurisdiction doctrine is

inapplicable here because "the issue at stake is legal in nature and lies within the realm of judicial

competence." *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *30 (quoting *Goya Foods, Inc. v.*

*Tropicana Prods., Inc*., 846 F.2d 848, 851 (2d Cir. 1988)); *see also Hasemann*, 2016 U.S. Dist. LEXIS 134019, at *20-25 ("Plaintiffs' false advertising claims do not involve technical considerations within the particular expertise of either the FDA or the FTC. The claims require a determination of whether a reasonable consumer would be deceived by the Infant Formula, an issue that is within the conventional experience of judges."); *Silva*, 2015 U.S. Dist. LEXIS 122186, at *8 ("[A]ssessing whether a label is false or deceptive is well within the traditional realm of the court's competence and does not necessitate deferring to an agency's technical expertise."); *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *23 (refusing to dismiss claims regarding "All Natural" labels on snack chips based on primary jurisdiction doctrine).

Finally, even if the FDA were to define "natural," the primary jurisdiction doctrine is still inapplicable because "Plaintiff's claims do not require a finding of what 'natural' means." *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *30. "Rather, the claims ask whether a reasonable consumer acting reasonably would be misled by a label displaying the word 'natural' when the product contains synthetic ingredients." *Id.*

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss or stay in its entirety.

If the Court grants any part of Defendant's motion, Plaintiff respectfully requests leave to amend. FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Date: October 14, 2019                                    Respectfully submitted,

                                                                    **REESE LLP**

                                        By: *  /s/ George V. Granade*
                                                George V. Granade

*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Janine Pollack
*pollackj@thesultzerlawgroup.com*
Jeremy Francis
*francisj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

*Counsel for Plaintiff and the Proposed Class*